Oscar MURPHY et al., Appellants,

v.

LOWER NECHES VALLEY AUTHORI-
TY et al., Appellees.

No. 7741.

Court of Civil Appeals of Texas,
Beaumont.

Oct. 30, 1975.

Rehearing Denied Nov. 21, 1975.

Provost, Umphrey, Doyle & Mehaffy, Port Arthur, for appellants.

O. J. Weber, Jr., Beaumont, for appellees.

STEPHENSON, Justice.

This is an action for damages for personal injuries to Wendell Keith Murphy, a minor. Suit was brought under the Texas Tort Claims Act against the Lower Neches Valley Authority (LNVA). This appeal is from a summary judgment granted LNVA.

The pleadings and summary judgment proof show Wendell was fourteen years old at the time he dove into an LNVA canal and struck his head on a hump or lump of clay protruding from the bottom of the canal. The waters of the canal were so muddy no one could see the humps by looking into the canal.

The recent Supreme Court case, *State v. Tennison,* 509 S.W.2d 560 (Tex.1974), construing the Texas Tort Claims Act, settled most of the questions presented in this case. That suit was one for damages when plaintiff slipped on a slick floor in a State Building in Austin. That Court made this statement in part:

> "It is well settled in this State that if the person injured was on the premises as a licensee, the duty that the proprietor or licensor owed him was not to injure him by willful, wanton or gross negligence [citing cases]. An exception to the general rule is that when the licensor has knowledge of a dangerous condition, and the licensee does not, a duty is owed on the part of the licensor to either warn the licensee or to make the condition reasonably safe [citing cases] . . .. Texas has conformed to the generally recognized rule that the duty to warn licensees

of dangerous conditions arises only in those instances where the licensor knows of the condition likely to cause injury. *Gonzalez v. Broussard,* 274 S.W.2d 737 (Tex.Civ.App.[—San Antonio] 1954, writ ref'd n. r. e.) . . .. Actual knowledge, rather than constructive knowledge of the dangerous condition is required." (509 S.W.2d 562)

■ The dangerous condition in this case was the presence of humps or lumps on the bottom of the canal. We proceed to examine the summary judgment proof to see if LNVA discharged its burden in accordance with the rules set forth in *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex. 1970). On a trial of the merits, plaintiffs would have the burden of proving that LNVA had knowledge of the dangerous condition *and* that Wendell did not. Therefore, on this motion for summary judgment LNVA had to prove as a matter of law that it had no knowledge of the dangerous condition *or* that Wendell did. See *Glenn v. Prestegord,* 456 S.W.2d 901 (Tex.1970).

■ First as to the lack of knowledge by LNVA, how can a movant in a summary judgment case establish a negative factual situation (lack of knowledge) as a matter of law? Apparently this is a question about which little has been written. The summary judgment proof in the case before us shows the following: Thomas R. Galloway is the general manager. There are three superintendents—T. G. Morgan, outside; Earl Fackler, pumping plant; and R. B. Rodgers, engineering. There are between fifty and sixty employees, including thirty in maintenance and ten or eleven canal or levee riders. In view of the settled law that knowledge by an agent or employee is knowledge by the employer, did LNVA have to furnish affidavits by every one of its agents and employees that each did not know of the dangerous condition? We think not.

The summary judgment proof shows that—Thomas R. Galloway, the general manager; Thomas Glenn Morgan, the out-side superintendent; and Walter Edward Pope the canal rider generally assigned to this area—they did not know of the dangerous condition which resulted in this injury. However, the summary judgment proof also shows that John Yancy, another LNVA canal rider, also checks the canal in question. There is no summary judgment proof that John Yancy did not know about the dangerous condition. Under this state of the record, has LNVA established lack of knowledge, as a matter of law? We conclude that it has not.

We have not been cited, nor have we found, a case in Texas or elsewhere passing directly upon this question. We proceed to establish a rule based upon common sense and general principles of law. Since the moving party is a legal entity having many employees and agents, it can discharge such burden only by establishing, as a part of its summary judgment proof, lack of knowledge on the part of each of the agents and employees having some duty pertaining to the alleged dangerous condition. Under our view of the law, a requirement that every employee and agent of the legal entity, regardless of his duties, swear to a lack of knowledge would defeat the purpose of the rule. On the other hand, when we require that everyone charged with any duty regarding the transaction in question to come forward in the summary judgment record, we have achieved the practical solution to the problem of establishing a negative fact as a matter of law.

As stated above, the trial court should have granted the motion for summary judgment if LNVA proved as a matter of law that Wendell knew about the dangerous condition. Wendell's deposition was considered as a part of the summary judgment proof. The deposition showed that Wendell had been swimming in the canal on many occasions before this incident occurred. He knew how deep the water was and knew there were humps and lumps on the bottom of the canal between a foot and a foot and a half high. However, the deposition also

shows that he did not know the humps or lumps were at the exact spot where he dived in. He had dived from that exact spot before and had not hit anything. A question of fact was raised by this evidence, and LNVA did not prove as a matter of law that Wendell knew about the dangerous condition which resulted in his injury.

█ Sec. 16 of the Texas Tort Claims Act, Tex.Rev.Civ.Stat. art. 6252–19 (Supp. 1974–1975) contains the following provisions, in part:

"Except where there is actual notice on the part of the governmental unit that death has occurred or that the claimant has received some injury or that property of the claimant has been damaged, any person making a claim hereunder shall give notice of the same to the governmental unit against which such claim is made, reasonably describing the damage or injury claimed and the time, manner and place of the incident from which it arose, within six months·from the date of the incident."

The uncontroverted summary judgment proof shows that more than a year elapsed before either Wendell's mother or father gave LNVA notice of this injury. Therefore, if LNVA proved as a matter of law that it did not have actual knowledge of this injury within six months from the date of its occurrence, then the trial court's action in granting the motion must be affirmed.

█ It is apparent that the same problems arise in connection with this question as discussed above concerning the lack of knowledge by LNVA as to the dangerous condition. How could LNVA prove this negative factual situation as a matter of law? We apply the same rule as set forth above in our disposition of the dangerous condition question. LNVA could discharge its burden by establishing lack of actual knowledge about Wendell's injury on the part of each of its agents and employees having some duty pertaining to the maintenance and upkeep of this particular canal as

well as those having some duty to take care of claims for injuries.

The summary judgment proof shows that T. G. Morgan, a superintendent, had what he called "hearsay" knowledge about this occurrence. His job was to take care of all maintenance, new construction, and operation of the canal system. Walter Pope, the canal rider, testified by deposition that he heard about the boy getting hurt when he jumped in the canal. He heard about it two or three days after it happened when he was told by "some of the other boys down there." He knew the boy got hurt, but not how bad, and he didn't know the boy's name. He reported to his superior, Mr. Galloway, that the boy had been hurt, about two or three days after the incident. He told Mr. Galloway where the boy jumped in when he got hurt. Pope then talked with the Port Neches Chief of Police, and the Chief confirmed that he had heard about the boy getting hurt. He thought he told Mr. Galloway about his talk with the Chief of Police. The deposition of Oliver Olson showed that he was the LNVA auditor and was in the office when Mrs. Murphy came in to report this claim more than a year after the accident. This was the first he had heard about it. The depositions of Michael Stampley, an LNVA employee; John Yancy, a levee rider; and R. B. Rodgers, an LNVA engineer; were all silent as to any knowledge of an injury. Affidavits by Tom Galloway and T. G. Morgan state they first heard about this accident more than a year after it occurred. The deposition of Wendell's father shows an account of this accident appeared in the Mid-County Chronicle in the next issue after the accident.

LNVA failed to establish as a matter of law that it did not have actual knowledge of this injury within six months from the date of its occurrence by failing to show that all of its agents and employees having some duty to the maintenance and upkeep of this canal had no actual knowledge. See *City of Fort Worth v. Davidson*, 117 Tex.

89, 296 S.W. 288 (1927). See also E. McQuillin, Municipal Corporation § 54.106 at 295 (3rd Ed. 1967); 39 Tex.Jur.2d § 208 *Municipal Corporation* 548 (1962).

LNVA argues that Wendell was a trespasser and the only duty owed to him was not to injure him willfully. On the other hand, plaintiffs contend Wendell was a gratuitous licensee. While the term of "gratuitous licensee" is not in common usage in Texas in cases of this nature, it has been defined as "one whose presence upon the premises is solely for the visitor's own purpose in which the possessor of the property has no interest, either business or social, and to whom the privilege of entering is extended as a mere favor by express consent or by general custom." *Gonzalez v. Broussard,* 274 S.W.2d 737, 738 (Tex.Civ. App.—San Antonio 1954, writ ref'd n. r. e.) [citing § 331 of the Restatement of Torts]. That particular section of the Restatement was omitted in the second edition but was carried over in substantially the same terms into § 330 [comment h(1)]. In *Gonzalez,* the suit was brought on behalf of a minor who had tripped over some rocks which had been placed on the playground of a drive-in theater by others. The owner had allowed other children to play on the premises; he knew of the presence of the rocks which the children brought, and such practice had continued for a long period of time. The child was held to be a "gratuitous licensee."

■ Other examples of "gratuitous licensees" include situations where a trespass has been tolerated for such a sufficient period of time that the public believes it has the "permission" of the possessor to use the property, e. g., such as the use of a pathway through a coal company's property [*Markovich v. Jefferson Coal & Coke Corporation,* 146 Pa.Super. 108, 22 A.2d 65 (1941)]; where people have used a railroad's right-of-way for a period of time without manifested objection from the company, those people have been classified as gratuitous licensees rather than trespassers [*Louisville & Nashville Ry. v. Blevins,* 293 S.W.2d 246 (Ky.App.1956; accord: *Gulf, C. & S. F. Ry.*

*Co. v. Matthews,* 99 Tex. 160, 88 S.W. 192 (1905); *Jara v. Thompson,* 223 S.W.2d 941 (Tex.Civ.App.—San Antonio 1949, writ ref'd)]. A gratuitous licensee has also been succinctly defined as a licensee who is "not a business visitor." *Laube v. Stevenson,* 137 Conn. 469, 78 A.2d 693, 695, 25 A.L.R.2d 592 (1951).

■ The summary judgment proof is conflicting as to the amount of use permitted by LNVA as to swimming. Even though several LNVA witnesses testified that the policy was to refuse to allow swimming in the canal, there is much evidence that boys swam in the canal every day during the summer. The depositions of Wendell and his young friend, Brett Anderson, show that they had never been asked not to swim in the canal and saw no "no trespassing" or "no swimming" signs. LNVA did not prove as a matter of law that Wendell was a trespasser.

Reversed and remanded.