**LOWER NECHES VALLEY AUTHORITY, Petitioner,**

v.

**Oscar MURPHY et al., Respondents.**

**No. B-5723.**

Supreme Court of Texas.

May 12, 1976.

Mehaffy, Weber, Keith & Gonsoulin, O. J. Weber, Beaumont, for petitioner.

Provost, Umphrey, Doyle & McPherson, Walter Umphrey and Jon B. Burmeister, Port Arthur, for respondents.

STEAKLEY, Justice.

This is a suit instituted by Oscar Murphy and wife, as next friends and natural

guardians of Wendell Keith Murphy, a minor, Respondents, against Lower Neches Valley Authority (LNVA). The suit was brought under the Texas Tort Claims Act for personal injuries suffered by Wendell. The trial court granted summary judgment for LNVA. The Court of Civil Appeals reversed the judgment of the trial court and remanded the case for a trial on the merits. 529 S.W.2d 816 (Tex.Civ.App.). We disagree with the Court of Civil Appeals and reverse and render judgment for LNVA.

LNVA is a governmental entity that operates a network of canals approximately 175 to 200 miles in length. The summary judgment record reveals that Wendell sustained serious bodily injuries when he dived into a LNVA canal and struck his head on a hump or mound of clay on the bottom of the canal. The waters of the canal are consistently muddy and the humps of clay on the bottom are not visible. Wendell was fourteen years old at the time of the accident and is at least of average intelligence for his age.

The testimony of Wendell on deposition is crucial. He stated that he had been swimming in the portion of the canal where the accident occurred on previous occasions and knew the area well. In particular, Wendell testified that he knew there were humps of clay on the bottom of the canal and that he knew the danger they presented.[1]

All parties, together with the courts below, have treated Wendell as enjoying the status of a licensee and as not having the status of a trespasser when swimming and diving in the canal at the time the accident occurred. We will assume without deciding that such was his status.

In *State v. Tennison,* 509 S.W.2d 560 (Tex.1974), we defined the nature of the duty owed to a licensee by a unit of government:

It is well settled in this State that if the person injured was on the premises as a licensee, the duty that the proprietor or licensor owed him was not to injure him by willful, wanton or gross negligence. *Carlisle v. J. Weingarten, Inc.,* 137 Tex. 220, 152 S.W.2d 1073 (1941); *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1950); *McKethan v. McKethan,* 477 S.W.2d 357 (Tex.Civ.App.1972, writ ref. n. r. e.); *Bass v. Cummings,* 415 S.W.2d 438 (Tex.Civ.App.1967, writ ref. n. r. e.); *Buchholz v. Steitz,* 463 S.W.2d 451 (Tex. Civ.App.1971, writ ref. n. r. e.). An exception to the general rule is that when

---

1. Q Now with respect to these humps that you told me about, you knew that they were there when you dived in?
A Yes, sir.

Q You knew the humps were in there where you were diving?
A Yes, sir.
Q And that some places you had to be careful or you would hit them?
A Yes, sir.

Q What you hit was a hump, wasn't it?
A Yes, sir.

Q You were familiar with the fact that the humps were there?
A Yes, sir.
Q And that you had to miss them or you could have some bad trouble?
A Yes, sir.

Q And you knew that you had to be careful there or that very thing would happen, didn't you?

A Yes, sir.

Q Wendell, in the swimming training you had had before, was one of the things that they taught you was to be sure of the bottom where you were diving in, particularly if you were diving into a stream or something other than a swimming pool where you could see the bottom?
A I have been told that, yes.

Q Well, you knew there were humps there, did you not?
A That there were humps there, yes, sir.
Q And you knew you had to avoid them?
A Well, the humps that I mostly knew about were the ones right around—closer in to the bank, and they were like ridges that ran out.
Q Well, you knew you had to be careful of humps when you dived in in that area, didn't you?
A Yes, sir.

the licensor has knowledge of a dangerous condition, and the licensee does not, a duty is owed on the part of the licensor to either warn the licensee or to make the condition reasonably safe. *Gonzalez v. Broussard,* 274 S.W.2d 737 (Tex.Civ.App. 1954, writ ref. n. r. e.).

LNVA, as the movant for summary judgment had the burden of establishing as a matter of law that there were no genuine issues of fact as to one or more of the essential elements of the asserted cause of action, i. e., that no fact issue stands in the way of judgment in its favor. *Betty L. Cook, et al v. Brundidge, Fountain, Elliott & Churchill,* 533 S.W.2d 751 (Tex.1976); *Guidry v. Neches Butane Products Co.,* 476 S.W.2d 666 (Tex.1972); *Torres v. Western Casualty & Surety Co.,* 457 S.W.2d 50 (Tex. 1970); *Glenn v. Prestegord,* 456 S.W.2d 901 (Tex.1970); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827 (Tex.1970).

The Court of Civil Appeals recognized that Wendell's deposition testimony established that he knew "there were humps and lumps on the bottom of the canal between a foot and a foot and a half high" in the area of his dive; but, said the Court, "the deposition also shows that he did not know the humps or lumps were *at the exact spot* where he dived in." (italics added). So the Court of Civil Appeals concluded that it was not shown "as a matter of law that Wendell knew about the dangerous condition which resulted in his injury." 529 S.W.2d at 819. In their reply brief "Respondents submit that each hump or lump of clay in itself constituted a dangerous condition"; that "there is a fact question present as to whether or not Wendell . . did realize that there were humps of clay in the location where he dove"; that "it is unclear whether Wendell . . . knew of various humps of clay away from the bank, or if the only humps of clay he was aware of were the humps that he referred to as ridges that ran out from the bank."

As before noted, the rule stated in *State v. Tennison, supra,* is that a licensor is under the duty of not injuring a licensee by willful, wanton or gross negligence; but that an exception to this rule is that when the licensor does have knowledge[2] of a dangerous condition, *and the licensee does not,* a duty is owed on the part of the licensor to either warn the licensee or to make the condition reasonably safe. There is no claim that LNVA was guilty of willful, wanton or gross negligence. The Court of Civil Appeals misapplied the exception in holding that the dangerous condition was not the presence of humps of clay in the area of Wendell's dive, of which Wendell had full knowledge, but was the exact hump that Wendell struck; and, further, that LNVA owed Wendell the duty to either warn him of this particular hump of clay or take reasonable measures to make it safe for Wendell's dive. In our view, the dangerous condition was the existence in the muddy waters of humps of clay which could be injuriously encountered when diving into the water. Wendell had the same knowledge of this condition that LNVA could have had, i. e., that there were dangerous humps of clay in the canal where he was swimming and into which he dived. LNVA could not have known the particular hump of clay Wendell would encounter just as Wendell did not know, and LNVA's duty did not extend to warning Wendell of, or making safe, each and every hump of clay in the canal, including the one in question. It being shown by the summary judgment record that as a matter of law LNVA violated no duty owed to Wendell, the trial court correctly sustained LNVA's motion for summary judgment.

The reliance of Oscar Murphy, et al, Respondents, upon *Gonzalez v. Broussard,* 274 S.W.2d 737 (Tex.Civ.App.1954, writ ref'd n. r. e.) is misplaced. The injured party there was precluded from recovering because he

---

2. The Restatement (Second) Torts, § 342, would impose liability on a possessor of land when he "knows or has reason to know" of a dangerous condition and the licensee does "not know or have reason to know of the condition

and the risk involved." The elements called for by this rule are not present here and for this reason no opinion is expressed concerning its adoption.

proved by his own testimony that he had all the knowledge that he could have received had he been warned by the licensor; *Broussard* was not rested on the fact that the injured child had actually seen the rock over which he stumbled. See also *Buchholz v. Steitz*, 463 S.W.2d 451 (Tex.Civ.App.1971, writ ref'd n. r. e.) where reference is made to the more liberal rule of the Restatement (Second) Torts, § 342. Even under this more liberal rule, a comment to this section states that a licensee is not entitled to expect that the possessor will warn him of conditions that are perceptible to him, or the existence of which can be inferred from facts within his present or past knowledge.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

SAM D. JOHNSON, J., writes concurring opinion in which REAVLEY, J., joins.

SAM D. JOHNSON, Justice (concurring).

This writer would adopt the rule of liability for the possessor of land to a licensee recited in Section 342 of the Restatement (Second) of Torts. The duty of an owner-occupier of land should be extended accordingly. Concurring Opinion, *State v. Tennison*, 509 S.W.2d 560, 563 (Tex.1974).

Even under the Restatement rule, however, this writer would reach the result of the majority.

REAVLEY, J., joins in this concurring opinion.