Emma BARTA, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. SA–93–CA–1105.**

United States District Court,
W.D. Texas,
San Antonio Division.

March 28, 1995.

Walter Burl Brock, Watkins & Brock, P.C., San Antonio, Texas, for Plaintiff Emma Barta.

Ernest C. Garcia, Asst. U.S. Atty., Austin, Texas, Jack B. Moynihan, U.S. Attorney's Office, San Antonio, Texas, for Defendant United States of America.

### *ORDER*

ORLANDO L. GARCIA, District Judge.

The Court conducted the bench trial of this cause in February, 1995. Plaintiff, Emma Barta, contends she sustained serious injuries when she fell down steps at Chapel # 3 located on Lackland Air Force Base on the night of December 24, 1992. Plaintiff further contends that Defendant, the United States of America, was negligent in not properly maintaining safe conditions at the chapel, and, therefore Defendant proximately caused Plaintiff's injuries. Plaintiff argues that Defendant maintained unreasonably dangerous conditions which Defendant knew of or

should have known of, and Defendant failed to correct or make the condition reasonably safe.

Emma Barta seeks $250,000 in past and future damages for Defendant's negligence, and Plaintiff brings this action under the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2674, and 2675(b). She has stipulated that Defendant is entitled to a credit of $17,532.49 in Medicare payments. Further, Plaintiff Barta asserts that there was no contributory negligence on her part or on the part of her granddaughter who escorted her on the night of her injury.

## FINDINGS OF FACT

The Court finds that Plaintiff Emma Barta on the night of December 24, 1992, slipped and fell attempting to descend three steps leading to the entrance of Chapel 3 at Lackland Air Force Base. Plaintiff was accompanied by her daughter, Katherine Cook, her adult granddaughter, Kimberly Cook Nelson, and Katherine Cook's family on that night. Katherine Cook, Ms. Barta's daughter, was a military dependent, but Ms. Barta was not a military dependent.

As a result of her fall, Ms. Barta sustained a fractured left hip and other injuries requiring medical expenses in the amount of $34,306.24 of which Medicare payments paid $17,532.49. Additionally, Ms. Barta has incurred physical pain, mental anguish, physical impairment, and lost wages.

It was dark on the night of December 24, 1992, when the Cook family and Ms. Barta arrived by car to the chapel area shortly before Christmas midnight mass. The Cook family car was parked in the chapel parking lot, and the Cook family with Ms. Barta began walking toward the chapel. Between the parking lot and the chapel was a handi-cap parking sign with parking places and a sign for the handicap ramp. Ms. Barta did not see the handicap ramp sign, and there was no handrail adjacent to the entrance to Chapel 3. Ms. Barta did not look for a ramp because she did not know there were steps there.[1] As they approached the chapel, Ms. Barta took the arm of her adult, granddaughter Kimberly. When she reached the three steps which go down to the chapel entrance level, Ms. Barta, without seeing the steps, fell from the top step to the bottom step fracturing her left hip.

Although it was nighttime, the lighting at the chapel entrance, as civil engineer Keith Allen, Sr. testified, was adequate and did meet specifications. Mr. Allen was also the engineer overseeing the construction of Chapel 3 between 1984 and the chapel's completion in 1986. The Court also finds that on the night of the occurrence the lights[2] were in working order, as testified by Sgt. Johnny Broshears, the chapel assistant on duty, who that night checked the lights, trash, and gate.[3] It is undisputed that there was no handrail on the steps or step lighting; yet, as testified by Keith Allen, Sr., the Uniform Building Code in effect at that time did not require either the handrail or step lighting. As testified by Mr. Allen, the Corp of Engineers could have easily added the handrails and lights had a problem been perceived or had there been reason for concern prior to the filing of this lawsuit. The government only became concerned about handrails after Ms. Barta's injury and the suit was filed.

As supported by testimony from MSgt. Jo–El Onstad, custodian of claims arising out of Lackland A.F.B., and by testimony from Sgt. Broshears, no other dependent or civilian person had ever reported falling on the steps since the chapel was opened in June of 1986. The Court finds the Defendant had no prior

---

1. Katherine Cook, Ms. Barta's daughter, testified that she, however, had been to Chapel 3 and entered the chapel by the entrance in question at least two other times during the daytime without her mother. Consequently, Katherine Cook, was aware that three descending steps existed prior to the entrance into the chapel.

2. Along the walkway approaching the steps and door to the chapel were two bollard lights approximately 36 inches above the ground angled downward, two-wall washer lights on each side of the door, and one recessed light above the door.

3. During her oral deposition on page 23, Ms. Barta testified, "Well, it was real dark outside. I don't know if the lights were on or not. I couldn't tell you." On the witness stand, however, Ms. Barta testified that no lights were on except the light above the door to the chapel.

knowledge of any dangerous or unsafe condition on the steps just before the entrance into Chapel 3.[4]

On December 18, 1992, Ms. Barta was examined by ophthalmologist Kristin Story Held, M.D., and was found to have cataracts and vision poor enough to require surgery for her right eye.[5] Katherine Cook's daughter was aware of her mother's poor eyesight to the extent that she encouraged Ms. Barta to see the ophthalmologist. Ms. Barta testified that she did not see the steps as she approached the chapel door. The Court finds that Ms. Barta's poor vision was a contributing factor to her slipping and falling as a result of her not seeing the descending steps as she approached the chapel.

Knowing of Ms. Barta's poor eyesight and having been to the entrance before, Katherine Cook had knowledge of the condition Ms. Barta would face as she approached the steps. Ms. Barta's family members could have looked for the ramp to use and walked more slowly with Ms. Barta. Ms. Barta testified that the group had been walking at a normal pace. Testimony also included that there were no other persons outside the chapel at the time of Ms. Barta's fall. However, many people who had passed through the same entrance were inside the chapel awaiting the mass to begin. Although it was nighttime, the lighting was sufficient for persons of normal eyesight to see the steps.[6]

The Court also finds that Lackland A.F.B. is a closed base and is not open to the public. This was supported by testimony from Mr. Wallace Pope, Chief of Police at Lackland A.F.B. from June of 1992 to 1994,[7] and by testimony from Katherine Cook that she was not stopped as she entered the base on the night of December 24, 1992, because she had a sticker on her car. The sticker identified the car as that of military personnel or retired military personnel who would be permitted on the base.

The Court finds that Ms. Barta had neither an expressed nor an implied invitation to enter Chapel 3 on Christmas Eve for midnight mass. Mr. Wallace Pope testified that the government would only invite active duty, retired persons, and immediate dependants. Immediate dependants did not include a mother or mother-in-law. However, a mother or mother-in-law would be permitted on base if escorted by a person carrying a military ID card. Sgt. Broshears also testified that the chapel does not advertise for or specifically invite non-military persons to attend services at base chapels.

## CONCLUSIONS OF LAW

Under the Federal Tort Claims Act, recovery is allowed against the United States "in the same manner and to the same extent" as recoveries are allowed for torts committed under like circumstances by a private individual in the state where the act or omission giving rise to claim occurred. 28 U.S.C. §§ 1346(b) and 2674. *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Johnson v. United States,* 576 F.2d 606, 610 (5th Cir.1978).

In Texas premises liability law, a person who enters property of another, and is not a trespasser, will normally be classified as either an invitee or a licensee. *Lechuga v. Southern Pacific Transportation Co.,* 949

4. Although the Plaintiff's daughter testified that several days after her mother's fall on the steps Sgt. Broshears told the daughter that his two year old son had fallen on the steps, Sgt. Broshears testified that was not what he had said. Rather, he testified that he said his son had fallen coming out of the door while exhibiting normal two year old behavior.

5. Testifying expert for the Defendant, Dr. Joe R. McFarlane, Jr., ophthalmologist who also examined Ms. Barta's eyes and medical records, stated that given Ms. Barta's condition at her December 18, 1992 eye examination, in his opinion Ms. Barta would be expected to have particular difficulty seeing at night.

6. Numerous photographs of the chapel steps and the handicap ramp were entered into evidence. Almost all of the pictures presented were taken at night under the lighting present at the time of Ms. Barta's fall. The photographer and TSgt. Broshears both testified that the pictures represented an accurate representation of the lighting present at the chapel entrance.

7. Mr. Pope cited Chapter 6 of the Base Entry and Internal Circulation Control manual which specifies that "[r]egardless of the mission, all US Air Force installations are considered closed bases." (Chapter 6, 6–2(e)(4)).

F.2d 790, 794 (5th Cir.1992); *Rowland v. Corpus Christi*, 620 S.W.2d 930, 933 (Tex.Civ. App.—Corpus Christi 1981, *writ ref'd, n.r.e.*). There are two types of invitees; a public invitee and a business invitee. *Lechuga*, 949 F.2d at 795.

> A public invitee is a person who is invited to enter and remain on land as a member of the public for a purpose for which land is held open to the public;
>
> A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the the land.

*Lechuga*, 949 F.2d at 795; *Prestwood v. Taylor*, 728 S.W.2d 455, 458–59 (Tex.App.—Austin 1987, *writ ref'd, n.r.e.*). In Texas, although a guest may be invited to private premises, that guest is merely a licensee. *Dominguez v. Garcia*, 746 S.W.2d 865, 866–67 (Tex.App.—San Antonio 1988, writ denied) ("invitee" is a legal term of art and more limited than the general term "invitation").

■ Ms. Barta was not on the military base as a business invitee. Lackland A.F.B. is a closed based, not open to the public; therefore, Ms. Barta was not a public invitee.

Ms. Barta, under the Texas law, was a licensee. A licensee is

> a person whose entrance upon or use of the premises of another is permitted by the owner under such circumstances that he is not a trespasser but is without any express or implied invitation. He is on the premises by sufferance and not by virtue of any business or contractual relations with, or any enticement, allurement, or inducement to enter being held out to him by the owner or occupant, but merely in his own interest or for his own purposes, benefits, convenience or pleasure.

*Lechuga*, 949 F.2d at 798 (citing *Rowland*, 620 S.W.2d at 933). Ms. Barta was on the base to attend Christmas midnight mass which was for her own interest, purpose, benefit, convenience, and pleasure.

■ A possessor's duty of care to a licensee is merely not to injure him "willfully, wantonly, or through gross negligence." *Lechuga*, 949 F.2d at 794; *Rowland*, 620

S.W.2d at 933. The one exception to the standard of care owed to a licensee is "when a possessor has knowledge of a dangerous condition on the land, and licensee does not, the possessor has a duty either to warn the licensee or to make the condition reasonably safe." *Lechuga*, 949 F.2d at 794–95; *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561 (Tex.1976). The preponderance of the evidence as stated by MSgt. Onstad, TSgt. Broshears, and Keith Allen reveals the Defendant did not have knowledge of a dangerous condition on the land when Ms. Barta slipped and fell on the descending steps to the entrance of Chapel 3.

### CONCLUSION

■ The Court, based on a preponderance of the evidence, concludes the Defendant was not negligent in properly maintaining safe conditions at the chapel, and Defendant did not proximately cause Plaintiff's injuries. The Court further finds based on a preponderance of the evidence that the Defendant did not willfully, wantonly, or through gross negligence cause Ms. Barta's injuries, and the Defendant did not have knowledge of a dangerous condition on the premises by the steps of Chapel 3. Ms. Barta's poor eyesight on the night of her December 24, 1992 fall did contribute to her fall.

It is ORDERED that Plaintiff take nothing, and the parties shall be responsible for their own expenses and attorney's fees.