Affirmed as Modified and Opinion filed December 31, 2002















Affirmed as
Modified and Opinion filed December 31, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00051-CV

____________

 

NORTHSHORE AUTO PARTS & SERVICE, Appellant

 

V.

 

BRIAN P. HOLLOWAY, Appellee

 

 

 

On Appeal from
the County Civil Court at Law No. 2

Harris County, Texas

Trial Court
Cause No. 745,362

 

 

 

O P I N I O
N

            Following a bench trial in this
personal injury case, the trial court rendered judgment appellee
Brian H. Holloway recover the following from appellant Northshore
Auto Parts & Service:  $18,000 in
damages, $4,063.56 in prejudgment interest, $1,248.05 in costs, and
post-judgment interest at the rate of ten percent per year.  We modify the judgment to reduce the
prejudgment interest to $1,415.34 and affirm the judgment as so modified.

 








FACTUAL AND
PROCEDURAL BACKGROUND

            On December 28, 1998, Holloway was injured when
he rode his bicycle between two poles holding Northshore’s
business sign.  Holloway’s head struck a
two-by-six board nailed between the poles. 
The accident occurred at night, and there were no warning devices on the
board.

            Holloway filed suit on December 18, 2000, alleging
common law negligence and negligence per se, in that the sign was in violation
of the Houston City Code. According to the docket sheet, Holloway filed his
first set of interrogatories, first request for production, and first request
for admissions on the same date.  On February 12, 2001, Northshore answered, apparently alleging only a general
denial.[1]  According to the docket sheet, Northshore filed its responses to discovery on April 6, 2001.  It appears undisputed that Northshore did not answer any request for disclosures, did
not provide a response to the request for production, and did not verify its
answers to the interrogatories.

            Trial was originally set for June
11, and then reset for June 18,
 2001.  Holloway’s counsel,
who had a vacation letter on file for June 4 through 29, did not appear, and
the trial court dismissed the case for want of prosecution.  On Holloway’s unopposed motion, the court
reinstated the case, and, after an unsuccessful attempt at mediation, trial was
set for September 17, 2001.  On September 13, 2001, Northshore
filed its first amended answer, alleging among other matters, that Holloway was
a trespasser.[2]

            On the day of trial, Holloway
objected to the late filed answer.  Northshore contended Holloway could not claim surprise
because Northshore had referred to trespass in its
response to the interrogatories and in mediation.  Holloway responded that the unverified interrogatory
responses contained no reference to trespass. 
Holloway also requested Northshore not be
permitted to present any evidence because of its untimely, improper, and
incomplete responses to discovery.

            The trial court took “judicial
notice of what’s been answered, so forth, in terms of discovery.”  It also struck “any amended pleadings as not
having been filed timely, if, in fact, they were filed at all.”

            Brian Holloway testified in his
case-in-chief.  He stated he was riding
his bicycle down Uvalde, went around a median, and came back up Uvalde when two
cars approached.  He left the road, got
on the entrance ramp to Northshore’s business, went
between Northshore’s sign supports, rode “smack into”
the board, and that was all he remembered. 
There was no warning device or reflective light, and Holloway had ridden
his bicycle under the sign before the accident. 
To Holloway’s knowledge, people used the area as a walk-through.

            On cross-examination, Holloway
testified he did not patronize Northshore.  Over Holloway’s objection, the court
permitted Northshore to elicit Holloway’s testimony
he was not on the premises to purchase anything from Northshore.

            When Northshore
called Northshore’s owner, James Walton Woosley, to testify, Holloway reiterated his previous
objection, and the court responded, “If it turns out that there is anything
that [sic] the matter of discovery, or lack thereof, I will disregard.”  Holloway did not again object on the basis of
discovery, and there is no indication the trial court excluded or disregarded
any evidence on that ground.  Woosley testified he had added the board in question to
hold a marquis sign to advertise daily specials.  Woosley testified
the marquis had been there for three or four years.  A sidewalk was available for passing in front
of Northshore’s business.  There was no paved area under the sign.

            On rebuttal, Carol Holloway, Brian
Holloway’s mother, testified she walked through the two pillars of the sign
whenever she got off the bus at a nearby bus stop.  She had also seen other people walk between
the pillars of the sign.  People did so
because the sidewalk was cracked and there was a large ant hill by the
curb.  According to Holloway, Woosley told her that a few days before the accident the
wind had blown down the marquis sign that had been on the board.

            At the close of evidence, the trial
court rendered judgment in favor of Holloway in the amount of $18,000.  Based on the period of June 29, 1998 through October 1, 2001, the court
awarded prejudgment interest of $4,063.56.

DISCUSSION

Striking of Appellant’s First Amended Answer  

            In issue one, Northshore
contends the trial court “erred” in striking its first amended answer.  Northshore filed
its amended answer on September
 13, 2001, four calendar days before the September 17 trial
setting.

            Within seven days of a trial date,
parties may amend their pleadings only with the trial court’s permission.  Tex.
R. Civ. P. 63. 
The trial court shall permit the amendment unless the opposite party
shows that filing the amendment operates as a surprise.  Id.  The trial court may not refuse an amendment
unless: (1) the opposing party presents evidence of surprise or prejudice; or
(2) the amendment asserts a new cause of action or defense and thus is
prejudicial on its face, and the opposing party objects to the amendment.  Greenhalgh v. Service
Lloyds Ins. Co., 787 S.W.2d 938, 939 (Tex. 1990).[3]

            An amendment is mandatory if it is
merely procedural in nature.  Stephenson v. LeBoeuf,
16 S.W.3d 829, 839 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied) (citing Chapin
& Chapin, Inc. v. Texas Sand & Gravel Co., 844 S.W.2d 664, 665 (Tex.
1992)).  An amendment is not mandatory if
it is substantive, i.e., one that
changes the nature of the trial.  Id. (citing Chapin, 844 S.W.2d at 665).  If the amendment is not mandatory, the
decision to allow or deny the amendment is within the sound discretion of the
trial court.  Id. (citing State Bar of Texas v. Kilpatrick, 874
S.W.2d 656, 658 (Tex.
1994)).  Therefore, the trial court’s
decision to allow or deny the amendment may be reversed only if it is a clear
abuse of discretion.  Kilpatrick, 874 S.W.2d at 658; Stephenson, 16 S.W.3d at 839.

            In the context of a case construing
Texas Rule of Civil Procedure 66, relating to trial amendments, this court has
explained:

            An amendment
prejudicial on its face has three defining characteristics ascertainable from
the amendment viewed in the context of the record.  First, the amendment must assert a new
substantive matter that reshapes the nature of the trial itself.  See
[Whole Foods Market Southwest, L.P. v. Tijerina, 979 S.W.2d 768, 776 (Tex. App.—Houston [14th
Dist.] 1998, pet. denied)].  Second, the
new matter asserted must be of such a nature that the opposing party could not
have anticipated it in light of the development of the case up to the time the
amendment was requested.  See id. 
“[M]erely because the opposing party did not
anticipate the issues in the amendment is not the test.  The question is whether the opposing party could have anticipated the newly
asserted matter as revealed by the record of the case.”   See
id.  (quoting Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc., 938 S.W.2d
743, 749 (Tex. App.—Dallas 1996, writ denied)) (emphasis in the original).  Third, the opposing party’s presentation of
the case would be detrimentally affected by the filing of the amendment.  See id.

 

Stephenson, 16 S.W.3d
at 839.

            In the trial court, the burden of
showing prejudice or surprise rests on the party resisting the amendment.  Greenhalgh, 787 S.W.2d at 939.  When a trial court refuses an amendment that
introduces a new substantive matter under Rule 63, the complaining party on
appeal has the burden of showing abuse of discretion.  Hardin v.
Hardin, 597 S.W.2d 347, 349 (Tex. 1980).

            We conclude Northshore
has not shown an abuse of discretion in the present case.  Northshore sought
to amend its answer nine months after Holloway filed his original petition and
after two previous trial settings.  The
amended answer contained, for the first time, an allegation Holloway was a
trespasser.  The trial court appears to
have based its decision to strike the pleadings on surprise.  In the trial court, Northshore
contended that, because it raised the trespass defense in its answers to the
interrogatories and in discussions at mediation, Holloway was not
surprised.  There is, however, nothing in
the appellate record to support Northshore’s
contention.  Without such support in the
record, we must presume the trial court did not abuse its discretion.  See
Forest Lane Porsche Audi v. G & K Services, Inc., 717 S.W.2d 470, 473
(Tex. App.—Fort Worth 1986, no writ); see
also Simon v. York Crane & Rigging Co., 739 S.W.2d 793, 795 (Tex. 1987)
(stating that party complaining of abuse of discretion has burden to present
record showing such abuse). 

            In addition, the new allegation
would have changed the nature of the trial. 
To establish his premises liability claim, Holloway had to prove the
following elements:  (1) Northshore’s actual or constructive knowledge of some
condition on the premises; (2) which condition posed an unreasonable risk of
harm; (3) Northshore did not exercise reasonable care
to reduce or eliminate the risk; and (4) Northshore’s
failure to use such care proximately caused Holloway’s injuries.  CMH
Homes, Inc. v. Daenen, 15 S.W.3d 97, 99 (Tex.
2000).  The extent of the duty Northshore owed Holloway depended on Holloway’s status as a
trespasser (whose presence on the property is unauthorized), a licensee (who
comes onto the property with permission, but for his own purposes rather than a
purpose mutually benefitting Northshore
and Holloway), or an invitee (who is expressly invited onto the property for Northshore’s and Holloway’s mutual benefit).  See
Marathon Corp. v. Pitzner, 55 S.W.3d 114, 129–30
(Tex. App.—Corpus Christi 2001, pet. filed) (citing Mellon Mortgage Co. v. Holder, 5 S.W.3d 654, 655 (Tex. 1999),
which focused on foreseeability, but did not do away
with the traditional premises liability categories).

            Holloway’s pleadings support his
status as a licensee.  See, e.g., Weaver v. KFC Management, Inc.,
750 S.W.2d 24, 26–27 (Tex. App.—Dallas 1988, writ denied) (indicating
individual who slipped on grease while taking short cut through a parking lot
may be considered licensee).  The duty
owed to a licensee is not to injure the licensee willfully, wantonly, or
through gross negligence, and, in cases in which the owner or
occupier has actual knowledge of a dangerous condition unknown to the licensee,
to warn of or make safe the dangerous condition.  Lower Neches Valley Auth. v. Murphy, 536 S.W.2d 561, 563 (Tex.
1976).  The only duty a premises
owner or occupier owes to a trespasser, however, is not to cause injury
willfully, wantonly, or through gross negligence.  Texas
Utilities Elec. Co. v. Timmons, 947 S.W.2d 191, 193 (Tex.
1997).  Thus, putting Holloway’s status
at issue would have reshaped the issue of the scope of Northshore’s
duty.[4]  We hold the trial court did not abuse its
discretion by striking Northshore’s untimely amended
answer.

            We overrule Northshore’s
issue one.

The Trial Court’s Purported Consideration of Unverified and Missing
Discovery

            In issue two, Northshore
complains, “The trial Court erred in giving consideration to the allegations
that the discovery sought by [Holloway] was not verified and that [Holloway]
allegedly served [Northshore] with Requests for
Disclosure which were never answered.” 
In support of this issue, Northshore cites TransAmerican Nat. Gas Corp. v. Powell, 811 S.W.2d
913, 917 (Tex. 1991)
(orig. proceeding).  In that case, the
trial court struck TransAmerican’s pleadings as a
discovery sanction.  In the present case,
however, the trial court struck Northshore’s first
amended answer, not as a discovery sanction, but because it was untimely; and,
as we held in issue one, the trial court did not abuse its discretion in doing
so.[5]

            We overrule Northshore’s
issue two.

Calculation of Prejudgment Interest

            In issue three, Northshore
complains the trial court erred in two ways in calculating interest.  First, the trial court used the wrong accrual
date.  Second, the trial court did not
consider the delay caused by Holloway’s failure to appear for trial and the
concomitant dismissal for want of prosecution. 
Northshore brought these complaints to the
trial court’s attention in its motion for new trial.  In his appellate brief, Holloway concedes the
trial court used the wrong accrual date, and agrees to remit $1627.40 of the
prejudgment interest.

            Texas Finance Code section 304.104
provides in relevant part:

            Except as provided by
Section 304.105 or 304.108, prejudgment interest accrues on the amount of a
judgment during the period beginning on the earlier of the 180th day after the
date the defendant receives written notice of a claim or the date the suit is
filed and ending on the day preceding the date judgment is rendered.

 

Tex. Fin. Code Ann. § 304.104 (Vernon Supp.
2002).

            Under Texas Finance Code section
304.108, a court may order that prejudgment interest does not accrue during
periods of delay, and the court shall consider periods of delay caused by the
defendant and the claimant.  Tex. Fin. Code Ann. § 304.108 (Vernon Supp.
2002).  The trial court has discretion in
awarding prejudgment interest during periods of delay.  Lege v. Jones, 919
S.W.2d 870, 876 (Tex. App.—Houston [14th Dist.] 1996, no writ) (citing prior
Tex. Rev. Civ. Stat. Ann. art. 5069-1.05, § 6(d); Southwest Airlines Co. v. Jaeger, 867
S.W.2d 824, 837 (Tex. App.—El Paso 1993, writ denied)).

            Here, the trial court used an
incorrect accrual date of June 29,
 1998, a date six months before the accident.  In a document presented to the trial court,
Holloway represented the “notice date” was December 29, 1998. 
On appeal, he states he gave Northshore
written notice of his claim on November
 26, 1999, and his reduction in prejudgment interest is
calculated on that assumption.  There is
nothing in the appellate record, however, to substantiate this date.  The record does show Holloway filed his
original petition on December
 18, 2000.  Prejudgment
interest at ten percent per annum on $18,000 beginning December 18, 2000 (the date
suit was filed) through September
 30, 2001 (the day preceding rendition of judgment) is
$1,415.34.  As set forth below, we modify
the judgment to reflect this adjustment.

            We also conclude the trial court did
not abuse its discretion in not reducing the prejudgment interest because of
the delay caused by the dismissal.  The
record contains Holloway’s verified motion to reinstate, filed July 5, 2001, just seventeen days after
the order of dismissal.  In the motion,
counsel explains he had a valid vacation letter on file covering the date on
which the case was called for trial.

            We sustain issue three in part and
order a reduction in prejudgment interest to $1,415.34 (instead of $4.063.61 as
set forth in the judgment).

Denial of Motion for New Trial

            In issue four, Northshore
argued the trial court “erred” in failing to grant its motion for new
trial.  Absent an abuse of discretion, we
will not disturb a trial court’s ruling on a motion for new trial.  Prestige
Ford Co. Ltd. P’ship v. Gilmore, 56 S.W.3d 73, 77
(Tex. App.—Houston [14th
Dist.] 2001, pet. denied).

            As Northshore
concedes, the errors alleged on appeal are the same as the errors alleged in
the motion for new trial.  Northshore’s issue four adds nothing new.

            We overrule issue four.

CONCLUSION

            We modify the judgment of the trial
court by reducing the prejudgment interest award to $1,415.34.  We affirm the judgment as so modified.

 

                                                                        /s/        John S. Anderson

                                                                                    Justice

 

Judgment
rendered and Opinion filed December
 31, 2002.

Panel
consists of Justices Yates, Anderson, and Frost.

Do Not
Publish — Tex. R. App. P.
47.3(b).

 

 











            [1]  This representation is from Holloway’s
counsel.  Northshore’s
only pleading in the record is its first amended answer is part of the
appellate record.





            [2]  On the day of trial, Holloway’s counsel
represented to the trial court he had checked the court’s file and not found an
amended answer.  The amended answer in
this court’s record is stamped September
 13, 2001.





            [3]  Appellant also alludes to Texas Rule of Civil
Procedure 66, which provides for trial amendments.  The record is devoid of any indication
appellant moved for a trial amendment under Rule 66.  Nevertheless, as Greenhalgh indicates, the
analysis is substantially the same under the two rules.  See Greenhalgh v. Service Lloyds Ins. Co., 787 S.W.2d 938,
939 (Tex. 1990) (stating two-part disjunctive test as applying to both Texas
Rules of Civil Procedure 63 and 66).





            [4]  Holloway was, however, prepared to, and did,
present evidence other persons commonly walked between the sign pillars,
evidence relevant to the question of trespasser or licensee status.  See
Murphy v. Lower Neches Valley Auth., 529 S.W.2d
816, 820 (Tex. Civ. App.—Beaumont 1975) (holding
summary judgment evidence did not establish that boy, who was injured after
diving into a canal, was trespasser, instead of gratuitous licensee, when
evidence showed boys swam in the canal every day and no signs prohibited such
activity), rev’d on other grounds, 536 S.W.2d 561 (Tex.
1976).





            [5]  Alternatively, if Northshore
is complaining the trial court disregarded or excluded evidence as a discovery
sanction, he has not shown reversible error on this ground.  See Angroson, Inc. v. Indep.
Communications, Inc., 711 S.W.2d 268, 275 (Tex. App.—Dallas 1986, writ ref’d n.r.e.) (holding appellant
who complained of exclusion of testimony of witness not disclosed in discovery
failed to show reversible error without a bill of exceptions).