

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00045-CV

———————————————

LAWRENCE D. VELA, Appellant

V.

AMY SHERMAN-VELA, Appellee

---

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CV19-0826

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

In this premises-liability case, Appellee Amy Sherman-Vela sued her husband, Appellant Lawrence D. Vela (David), after she fell from his deck and injured herself.[1] The case proceeded to a jury trial where David admitted fault, and the trial court directed a verdict in Amy's favor on the issue of David's liability. The jury awarded her nearly $3 million in damages. David's counsel raises five issues on appeal: whether (1) the trial court erred in granting the directed verdict because Amy did not conclusively prove each essential element of a premises liability cause of action; (2) the evidence was legally sufficient to support the directed verdict as to each element of Amy's claim; (3) the trial court abused its discretion in excluding and admitting certain trial evidence; (4) the evidence was legally and factually sufficient to support the damages award; and (5) the noneconomic damages awards violated David's due process and due course of law rights. We will sustain the first issue, reverse the trial court's judgment, and remand to the trial court for further proceedings.

## I. BACKGROUND

### A. RELEVANT FACTS

David and Amy have been best friends for more than twenty years. On the morning of July 9, 2017, Amy visited David at his house where the two sat together

---

[1]David and Amy were married after the accident at the center of this dispute occurred so that Amy could receive health insurance benefits through David's employer.

on the back deck, drinking coffee. At some point during the visit, Amy stood and tripped on a wooden board in the deck. She then fell down the stairs—which did not have a handrail—and off the deck. Both Amy and David testified that, since the fall, Amy has suffered from back pain and other physical maladies that have grown progressively worse. She has undergone multiple surgeries to remedy these issues.[2]

At trial, David admitted that the deck was "uneven" and in "poor condition": "Well, [the deck] had been there a while; and . . . it was weathered and needed some repair work, you know." He also confirmed that there was no handrail on the stairs at the time of Amy's fall. Finally, David testified that it was his fault that Amy fell and that his negligence caused her injuries.

Amy testified that she was walking on the deck looking around David's backyard when her foot got caught on a board in the deck. She said that she then fell down the stairs because there was no handrail to stop her from falling. According to Amy, the boards in the deck were "rickety" and "unlevel."

After Amy's fall, David filed a claim with his homeowner's insurance that was denied. Feeling that he was responsible for her injuries, David agreed to marry Amy so that she could be added to his health insurance to receive the medical care she needed. They were married sometime in late 2017, after she fell from David's deck.

---

[2]The trial evidence also detailed Amy's health issues that existed prior to her fall from David's deck, which included a history of chronic back and neck pain, bulging discs, mild scoliosis and arthritis, and bone spurs in her neck.

## B. PROCEDURAL HISTORY

Amy sued David in June 2019 for negligence stemming from the condition of his deck and its lack of proper rail support. She did not specifically plead a premises-liability claim. At trial, after both parties closed, Amy moved for a directed verdict, arguing that the evidence undisputedly proved that David's negligence caused her injuries. David's counsel argued that the case should have been brought as a premises-liability claim and that there existed fact issues to be resolved by the jury related to "the negligence question."

The trial court granted a directed verdict in Amy's favor on the issue of negligence and submitted the issue of damages to the jury. Based on the jury's assessment of damages, the trial court entered its final judgment awarding Amy $2,844,074.20, plus interest. David's counsel requested findings of fact and conclusions of law and filed motions for new trial and judgment notwithstanding the verdict, all of which were denied by the trial court. This appeal followed.

## II. DISCUSSION

The parties agree on appeal that Amy's claim is properly categorized as a premises-liability claim and that she was a licensee on David's premises when she fell from the deck. We concur because Amy alleged only that she was injured by dangerous conditions present at the premises—rather than as a result of David's activity on the premises—and because Amy was a social guest at David's home when she was injured.

## A. EVIDENCE WAS LEGALLY SUFFICIENT

Because it would result in a rendition of judgment, we will consider the second issue first. *See Bradleys' Elec., Inc., v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (holding that Appellate courts must first address rendition issues before remand issues) (citing Tex. R. App. P. 43.3). In this issue, David's counsel argues that the evidence was legally insufficient to establish three elements of Amy's premises-liability claim. Specifically, it is argued that the evidence was legally insufficient to establish (1) the existence of a condition that posed an unreasonable risk of harm to Amy; (2) that Amy did not know of the condition; and (3) that David's failure proximately caused Amy's injury. We overrule this issue because there was more than a mere scintilla of evidence to support each of these elements.

### 1. Standard of Review

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). Anything more than a scintilla of evidence is legally sufficient to support a finding. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003). More than a scintilla exists if the evidence rises to a level that

would enable reasonable and fair-minded people to differ in their conclusions. *Gunn*, 554 S.W.3d at 658.

## 2. Premises Liability

A person injured on another's property has two potential causes of action against the property owner: (1) a negligence claim for negligent activity on the premises and (2) a premises-liability claim for an unreasonably dangerous condition on the premises. *Clayton W. Williams Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997). Though both theories are based in negligence principles, they are independent causes of action that require different elements of proof. *Id.* at 529. When the alleged injury is the result of a negligent activity, the plaintiff must have been injured by the activity itself rather than by a condition present on the premises. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). On the other hand, when the alleged injury is caused by an unsafe or dangerous condition on the premises, the plaintiff is limited to a premises-liability theory, regardless of how the plaintiff chose to plead its cause of action. *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 648 (Tex. 2016).

In a premises-liability action, the duty owed by the premises owner to the plaintiff depends on the plaintiff's status on the premises. *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 412 (Tex. 2010). A plaintiff's status is usually classified as either an invitee, licensee, or trespasser. *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999). A plaintiff is classified as a licensee when she enters the premises of another merely by express or implied permission rather than by express or implied invitation.

6

*Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 829 (Tex. 2021). Social guests—such as friends and family—are generally classified as licensees. *Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157, 164 (Tex. App.—Dallas 2011, no pet.); *see Smith v. Brittain*, No. 12-19-00397-CV, 2020 WL 6164983, at *3 (Tex. App.—Tyler Oct. 21, 2020, no pet.) (mem. op.) (collecting cases); *Osadchy v. S. Methodist Univ.*, 232 S.W.3d 844, 852 (Tex. App.—Dallas 2007, pet. denied) (explaining that, unless a person is present on the premises for the mutual benefit of himself and the owner—such as in a business dealing—"no invitation can be implied and the injured person must be regarded as a mere licensee").

A premises owner owes a duty not to injure a licensee by willful, wanton, or grossly negligent conduct and, if the owner has actual knowledge of a dangerous condition unknown to the licensee, to use ordinary care to either warn the licensee of the condition or to make the condition reasonably safe. *Wyckoff*, 357 S.W.3d at 164 (citing *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008)). However, "[i]f the licensee has the same knowledge about the dangerous condition as the licensor, then no duty to the licensee exists." *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003); *see Lower Neches Valley Auth. v. Murphy*, 536 S.W.2d 561, 564 (Tex. 1976) ("[A] licensee is not entitled to expect that the possessor will warn him of conditions that are perceptible to him, or the existence of which can be inferred from facts within his present or past knowledge."). Thus, to establish liability on its premises-liability claim, a licensee must prove that (1) a condition of the premises created an

7

unreasonable risk of harm; (2) the licensor actually knew of the danger; (3) the licensee did not actually know of the danger; (4) the licensor failed to exercise ordinary care to protect the licensee from danger; and (5) the licensor's failure proximately caused the licensee's injury. *State v. Williams*, 940 S.W.2d 583, 584 (Tex. 1996).

### 3. Existence of a Condition That Posed Unreasonable Risk of Harm

The evidence was legally sufficient to establish the existence of a condition that posed unreasonable risk of harm to Amy on David's deck. A condition poses an unreasonable risk of harm "when there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar events as likely to happen." *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) (internal quotations omitted).

The evidence here was uncontroverted and included:

- David's testimony that the deck was "uneven," "in poor condition," "weathered," and in need of repair and that he was negligent in not fixing the deck;

- David's and Amy's testimony that there was no handrail on the stairs; and

- Amy's testimony that the boards on the deck were "rickety" and "unlevel."

We hold that this constitutes more than a mere scintilla of evidence that would allow reasonable and fair-minded people to differ in their conclusion that it was

foreseeable that a person would likely be injured in the same or similar manner as Amy was here.

### 4. Amy's Knowledge of the Condition

The evidence was also legally sufficient for reasonable and fair-minded people to disagree as to whether Amy knew of the dangerous condition. David's counsel argues that the evidence conclusively proved that Amy *did* know of the danger because the evidence established that Amy and David had been friends for twenty years, he had owned the house at which the injury occurred for that entire time, and Amy specifically testified that the boards were rickety and the handrail was missing. However, it is not clear from the record if Amy had ever been on David's deck before, how long she had been on the deck before the injury occurred, or whether she knew the boards were rickety and the handrail was missing before she fell.

From this evidence, reasonable minds could draw conflicting inferences about her knowledge of the dangers posed by the deck and missing handrail. Thus, there was more than a scintilla of evidence that Amy did not know about the dangerous condition before she fell.

### 5. Proximate Causation

Finally, there was more than a scintilla of evidence that a failure of David's proximately caused Amy's injury. Proximate cause in a premises-liability case exists if the premises owner's acts or omissions were a substantial factor in causing the plaintiff's injuries. *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006). Again, the

9

poor condition of the deck was well-documented at trial and David explicitly testified

that the deck—which was in his control as the homeowner—had been in disrepair for

some time and that his inactions caused Amy's injuries.  It would be reasonable from

this evidence to infer that some failure on David's part (i.e. to fix the deck or add a

handrail) was a substantial factor in causing Amy's injuries.

For these reasons, we overrule the second issue.

## B.  DIRECTED VERDICT WAS IMPROPER

We next consider the first issue in which David's counsel argues that the

directed verdict was improper because the evidence did not conclusively prove each

element of Amy's premises-liability claim.[3]  We sustain this issue.

### 1.  Standard Of Review

We review a trial court's directed verdict de novo.  *City of Baytown v. Schrock*,

645 S.W.3d 174, 178 (Tex. 2022).  A directed verdict in favor of a plaintiff on its cause

of action is proper only when the evidence conclusively establishes the plaintiff's right

to judgment as a matter of law, or, put differently, when reasonable minds can draw

---

[3]As a subissue to issue one, David's counsel also argues that the judgment should be reversed because Amy moved for a directed verdict only on a general negligence claim rather than a premises-liability claim.  We overrule this argument because the failure to specify a ground in the motion for directed verdict "is not always fatal, especially if there are no fact issues raised by the evidence."  *Tex. Emp. Ins. Ass'n v. Page*, 553 S.W.2d 98, 102 (Tex. 1977); *see Westchester Fire Ins. Co. v. Admiral Ins. Co.*, 152 S.W.3d 172, 191 (Tex. App.—Fort Worth 2004, pet. denied) (instructing that appellate courts must consider every possible ground in the record that might support a directed verdict "regardless of the grounds asserted by the movant or upon which the trial court granted the directed verdict").

only one conclusion from the evidence. *In re Estate of Crawford*, 795 S.W.2d 835, 838 (Tex. App.—Amarillo 1990, no writ) (citing *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978); s*ee Kline v. O'Quinn,* 874 S.W.2d 776, 785 (Tex. App.—Houston [14th Dist.] 1994, writ denied). "In reviewing a directed verdict, we decide whether there is any evidence of probative value to raise an issue of material fact on the question presented, and we review the evidence in the light most favorable to the person suffering the adverse judgment." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 220 (Tex. 2011). If a fact issue remains on a material question, a directed verdict is not proper. *Id.* at 220–21. "We consider the evidence in a light favorable to the party suffering an adverse judgment, crediting all reasonable inferences and disregarding evidence and inferences to the contrary." *Shrock*, 645 S.W.3d at 178.

### 2. A Fact Issue Remains As to Amy's Knowledge of the Danger

To have been entitled to a directed verdict, Amy was required to conclusively prove that she did not actually know of the dangers related to the deck's poor condition and missing handrail. *Id.* As discussed above, the evidence was legally sufficient on this element. However, when viewed in the proper light under our directed-verdict standard of review, it does no better than to raise a fact issue as to Amy's knowledge of these dangers.

The evidence showed that David and Amy had been sitting on the deck visiting before Amy stood to walk around the deck. Amy testified that the boards in the deck

11

were "rickety" and "unlevel" and that the reason she fell down the stairs was because they did not have a handrail. David confirmed the deck's poor condition, testifying that it had "been there a while," was "weathered," and "needed some repair work." Based on this evidence and crediting all reasonable inferences appropriately, we cannot say that Amy conclusively proved that she had no knowledge of the dangers raised by the deck's poor condition and the stairs' missing handrail.

To the contrary, it would be reasonable to infer that Amy *did* have knowledge of these dangers, given that she (1) testified directly that the deck was unlevel and had rickety boards and (2) had been sitting on the deck for some time before she fell, which gave her the opportunity to observe its poor condition and that the stairs lacked a handrail. If nothing else, it would be reasonable to infer from this evidence that Amy's knowledge of the danger was at least equal to David's, an inference that itself precludes Amy from obtaining a directed verdict. *See Miller*, 102 S.W.3d at 709; *Murphy*, 536 S.W.2d at 564.

Amy argues that her knowledge of the rickety boards "is not evidence of any knowledge of the danger" and that her "meander about the deck—coffee cup in hand—supports the inference that she believed it was safe for her to do so." This argument fails, though, because to be entitled to a directed verdict, Amy needed to raise more than a mere inference that she believed it was safe to walk around the deck; she needed to affirmatively and conclusively prove that she had no knowledge of the dangers created by the deck's condition.

12

Because a fact issue remains as to this element of Amy's premises-liability claim, the trial court erred in directing the verdict in her favor and there remain issues that need to be resolved by the jury. We sustain the first issue.

## III. CONCLUSION

Having sustained the first issue and overruled the second, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.[4] *See Columbia/HCA of Hous., Inc. v. Tea Cake French Bakery and Tea Room*, 8 S.W.3d 18, 22 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("If we find any evidence of probative value which raises a material fact issue [after a directed verdict was granted], then the judgment must be reversed and remanded for a jury determination on that issue."); *see also Szczepanik v. First S. Tr. Co.*, 883 S.W.2d 648, 649 (Tex. 1994) ("If there is any conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper and the case must be reversed and remanded for jury determination of that issue.").

/s/ Brian Walker

Brian Walker
Justice

Delivered: June 29, 2023

---

[4]Because our holdings on issues one and two are dispositive, we need not consider the remaining issues. *See* Tex. R. App. P. 47.1.