Francisco **MENDOZA**, et al.,
Appellants,

v.

**CITY OF CORPUS CHRISTI**, et
al., Appellees.

No. 13-84-371-CV.

Court of Appeals of Texas,
Corpus Christi.

Oct. 31, 1985.

Rehearing Denied Dec. 5, 1985.

Russell H. McMains, Edwards, McMains & Constant, William J. Tinning, Corpus Christi, for appellants.

Darrell Barger, Hunt, Hermansen, McKibben & Barger; Jay B. Doegey, City Atty., Corpus Christi, for appellees.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a judgment non obstante veredicto granted by the trial court in a wrongful death and survival action. The survivors of Hector Mendoza originally filed suit against the City of Corpus Christi and J.W. Lanphier, the pier owner, after their son, Hector Mendoza, drowned in the waters of Lake Corpus Christi. The jury found in favor of the Mendozas. Upon motion by the City, the trial court granted a judgment non obstante veredicto. The Mendozas appeal. We affirm.

At the time of his death, Hector Mendoza was working for Lanphier Construction Company, removing debris from Lanphier's

land which adjoined Lake Corpus Christi. On August 31, 1982, Mendoza told a co-worker he was going swimming. His co-workers later became concerned when he failed to return to work after a lunch break. His body was found about ten yards off Lanphier's pier in about two and a half feet of water. His neck was broken and the cause of death was drowning.

Appellants' theory of the case was that Mendoza met his death when he dove off the pier into the shallow water below. They alleged that the City of Corpus Christi was negligent in its failure to post warning signs that the water at the end of this pier was shallow. The jury found that the City had knowledge of the shallow water condition of the area where Mendoza dove; that the City in the exercise of ordinary care should have discovered this condition; that the City failed to give adequate warning of the dangerous condition; all of which constituted negligence and the proximate cause of Mendoza's injuries. They found that Mendoza was contributorily negligent to the extent of forty-nine percent. After the jury verdict, the trial court granted the City's motion to disregard the jury's answer to the special issue which inquired into the City's actual notice of a dangerous condition.

Appellants' first four points of error will be considered together since they all assert error by the trial court in granting the City's motion for judgment non obstante veredicto. In their first and second points of error, appellants assert that the trial court erred in granting the judgment non obstante veredicto because the evidence raised a fact issue for the jury concerning the City's knowledge of the dangerous condition and as to the City's causal negligence and liability. Appellants claim in their third and fourth points of error that the trial court's action was improper because whether the City had actual knowledge was immaterial since Mendoza was either an invitee or his status was not determinative because the City breached its duty of ordinary care to Mendoza.

In order to sustain the judgment notwithstanding the verdict, we must find that there is no evidence upon which the jury could have made the findings relied upon. The trial court, while acting on the motion before it, must consider all testimony in the light most favorable to the non-movant. Every reasonable inference is to be indulged in the nonmovant's favor. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726 (Tex.1982); *Meyer v. Mack Sales, Inc.*, 645 S.W.2d 493 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.).

The City's duty to Mendoza in this instance is directly related to his status at the time of the accident. Was he a trespasser, a licensee or an invitee in this situation? A trespasser is one who enters upon the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in performance of any duties to the owner, but merely for his own purpose, pleasure or convenience. *Rowland v. City of Corpus Christi*, 620 S.W.2d 930. (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). The legal duty the landowner owes a trespasser is only not to injure him willfully, wantonly or through gross negligence. *Id.* at 933. A licensee's presence on the premises is for his own convenience or on business for someone other than the owner. The duty owed a licensee is not to injure willfully, wantonly, or through gross negligence and to warn of or make safe dangerous conditions actually known. *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561 (Tex.1976); *State v. Tennison*, 509 S.W.2d 560 (Tex.1974). The standard of conduct required of a premises occupier toward his invitees is the ordinary care that a reasonably prudent person would exercise under all pertinent circumstances. *Corbin v. Safeway Stores*, 648 S.W.2d 292 (Tex.1983). The test to determine if an individual is upon the land as an invitee is whether the injured person has business relations with the owner at the time of the injury which would render his presence of mutual aid to both. *Rosas v. Buddies Food Store*, 518 S.W.2d 534 (Tex. 1975). Liability depends on whether the

owner acted reasonably in light of what he knew or should have known about the risks accompanying a premises condition. *Corbin* at 295.

The evidence in this case shows that Hector Mendoza was on Lanphier's property for the purpose of removing trash and debris. After eating lunch he decided to go swimming. He did not have permission from the landowner, his supervisor, or the City to swim or dive off the pier. He left the area around which he had been conducting business for Mr. Lanphier and proceeded on a venture of his own choosing.

■ The permit that was issued by the City to construct the pier was limited to fishing or loading purposes only. It was not a diving or swimming pier, nor was it open to the public for any purpose. Mendoza had no business relationship with the City, and there was nothing about his venture off the pier that was for the mutual benefit or aid to both himself and the City. It is clear from the undisputed evidence, therefore, that Mendoza was not an invitee. He was never given permission by the City to swim or dive into the waters at Lanphier's pier.

■ It is apparent that Mendoza was either a trespasser or, at most, a licensee. Actually, it is unnecessary for us to determine in this instance which status he carried because, under either theory, the evidence does not bear out the jury's finding that the City had actual notice of the shallow condition of the water in the particular area where Mendoza dove. There is no contention by the appellants, nor was there any evidence presented, that the City's conduct was willful, wanton or constituted gross negligence. Appellants did not plead nor did they prove any grossly negligent conduct on the City's part. If, indeed, Mendoza was a trespasser as to the City, which unquestionably he was, it is clear that the City was not liable because they committed no grossly negligent acts or omissions toward Mendoza.

In order for the City to be held liable under the best possible status (the licensee theory), Mendoza's survivors were required to prove that: 1) the City had actual knowledge that the Lake waters were shallow at Lanphier Pier; 2) they knew that Mendoza or someone of the same status would dive off the Lanphier pier; and 3) the City failed to warn Mendoza and/or make safe this allegedly dangerous condition.

Appellants' main argument is that the City's on-site representative visited the pier on several occasions prior to the accident, and was aware of the dangerous condition that the pier would present to divers because of his actual knowledge of the falling lake level. They also contend that the on-site representative conducted continuous inspections to monitor lake levels, but supplied such information to the public only by newspaper. They further allege the City had notice of numerous other drowning deaths at the lake prior to Hector Mendoza's death.

The evidence in the record, however, shows that the City's representative visited the pier in question only four times. The representative went to the site where the accident happened approximately one week after the accident took place (early September of 1982). The representative testified that he visited this same site two times in March of 1983 and on one other occasion (no time or date shown in the record). There is no evidence to show that this other occasion was any time prior to the accident. There is no evidence to show that anyone from the City visited the site prior to the accident. There was evidence, however, that the City had a representative who, on a part-time basis only, drove around the lake and its environs on occasion. These inspections covered an area of more than 200 miles of shoreline and more than 1,200 private piers. These inspections were not for safety purposes.

Riley, the City representative, testified that the City measured the level of the lake above sea level, but not its depth. He testified that the only means to actually determine the depth at any particular location would be to measure the distance from the lake bottom to the water's surface. It

is clear that the City knew that the lake level was falling, but this knowledge did not serve as evidence to show that the City knew that the water at the end of the private Lanphier Pier was too shallow for Mendoza or someone such as him to dive into or that this constituted a dangerous condition for which the City had a duty to warn Mendoza.

■ Appellants also argued that the City was aware of other drowning accidents on the lake. They contend that this knowledge imputed knowledge on the part of the City of a dangerous condition at Lanphier Pier. Appellants refer us to a portion of the record in which the city representative testified that he did *not* know of a diving accident which had occurred at Sunrise Beach in 1977. They also refer us to an exhibit and accompanying testimony which listed all drowning accidents on the lake since 1960. There was no evidence that any of these deaths were diving accidents; nor was there any evidence that these accidents occurred anywhere near the Lanphier Pier. We find no evidence that the City had actual knowledge of a dangerous condition in the lake where Hector Mendoza was injured. We also find no evidence of any conduct on the part of the City which was willful, wanton or grossly negligent. Therefore, whether Mendoza was a trespasser or a licensee, the evidence does not support the jury's finding that the City had actual notice of a dangerous condition at the Lanphier pier.

■ Appellants also argue in their third and fourth points of error that the trial court erred in submitting this case under a licensee theory and in rendering judgment non obstante veredicto on "the mistaken and out-dated application of status principles." Our review of the record shows that appellants made no objections to the charge as submitted. They did not argue that Mendoza's status was immaterial or that a theory of simple negligence should apply. Appellants waived any error in the manner in which the case was submitted to the jury. TEX.R.CIV.P. 279. Appellants points of error are overruled.

Having decided all of the controlling issues presented (TEX.R.CIV.P. 451), the judgment of the trial court is AFFIRMED.

DORSEY, J., dissenting.

DORSEY, Justice, dissenting.

I respectfully dissent. The majority's holding appears to be that Mendoza was a trespasser in the municipal reservoir, but even if he were a licensee, still he would be unable to recover because there was no evidence of the city's knowledge of the hazard at the place of injury.

Before analyzing the deceased's status at the place of injury, it should be kept in mind that the court below and the parties tried the action based upon Mr. Mendoza being a licensee and not a trespasser. Appellee City of Corpus Christi did not seek issues based on the decedent's status as a trespasser, although it objected to issues based on a licensee theory.

In order to analyze Mr. Mendoza's status, it is essential to recognize that his status must be determined in relation to the City and its lake; not the deceased's status vis a vis Mr. Lanphier, who was dismissed from the action prior to verdict, nor to Mr. Lanphier's pier from which Mr. Mendoza dove.

The lake into which Mr. Mendoza dove is a municipal reservoir owned and operated by the City of Corpus Christi and used by members of the public for recreational purposes. Unlike *Rowland v. City of Corpus Christi*, 620 S.W.2d 930 (Tex.Civ.App.—Corpus Christi-1981, writ ref'd n.r.e.), there were neither signs nor ordinances prohibiting diving and swimming where the incident occurred. I disagree with the majority's characterization of Mr. Mendoza as a trespasser in a publicly owned and operated lake under the circumstances. *See Trinity River Authority v. Williams*, 689 S.W.2d 883 (Tex.1985).

To sustain a judgment non obstante veredicto, the appellate court must find that there is no evidence to support of the jury's verdict, the judgment non obstante veredic-

to must be reversed. *Dowling v. NADW Marketing, Inc.,* 631 S.W.2d 726 (Tex. 1982); *Meyer v. Mack Sales, Inc.,* 645 S.W.2d 493 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.).

In the instant case, I believe there was some evidence to support the jury's findings. The City had a representative at the lake who took readings twice daily of the lake level. Those readings reflected that the lake had fallen 1.5 feet in the 60 days prior to the accident; that the City's agent would routinely drive or boat around the lake to check the piers located, as was Lanphier's, around the perimeter of the lake, and that at the time of the accident one half of Lanphier's pier (40 feet) was over dry land, whereas prior to the lake level falling, the entire 80 feet was over water. I do not think it necessary that there be direct evidence that prior to the accident the City knew the precise depth of the water off Lanphier's pier and that as such it constituted a dangerous condition in order for the jury to affirmatively answer the question of the City's actual knowledge. It is not necessary for a citizen to abandon his common sense and reasoning when he takes the oath as a juror. The jury could well have reasoned that because the City knew that, as the level of the lake fell, the water receded from the shoreline, and the water under piers attached to the shoreline became shallower all around the lake, then the City would know that water underneath Lanphier's pier was shallow also, and as such constituted a dangerous condition.

In *Lower Neches Valley Authority v. Murphy,* 536 S.W.2d 561 (Tex.1976), the Supreme Court held that it was not necessary for the injured person or the owner-occupier to have knowledge of the location of the particular hump of clay that the diver struck; rather, it was sufficient that they know that humps of clay are generally located throughout the canal. Likewise, the jury may find actual knowledge by the City of the dangerous condition in the vicinity of Lanphier's pier by the evidence of the City's actual knowledge of the shallow water all around the lake's perimeter, includ-

ing that area immediately off Lanphier's pier.

For these reasons, I would REVERSE the judgment of the trial court and reinstate the verdict of the jury.