Lisa SMITHER, Individually and as Personal Representative of the Estate of Michael Smither, Deceased, and as Next Friend of Ashley Nicole Smither, Appellant,

v.

**TEXAS UTILITIES ELECTRIC CO., Appellee.**

No. 08–91–00191–CV.

Court of Appeals of Texas, El Paso.

Jan. 29, 1992.

Rehearing Overruled Feb. 26, 1992.

Larry Zinn, San Antonio, Marc R. May, Odessa, for appellant.

Travis E. Vanderpool, Worsham, Forsythe, Sampels & Wooldridge, Dallas, for appellee.

OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In a wrongful death suit stemming from the drowning of Appellant's husband, the trial court rendered a take-nothing summary judgment on Appellee's motion. We affirm.

In two points of error, Lisa Smither (Mrs. Smither), widow of Michael Smither and Appellant herein, contends that the trial court erred in granting the motion for summary judgment of Texas Utilities Electric Company (TU), Appellee, because there is a genuine issue of fact and TU was not entitled to judgment as a matter of law. TU counters with the claim that it owed no duty to the deceased trespasser to keep the premises in a safe condition, it was not grossly negligent under the evidence as a matter of law, and Appellant's cause of action based upon allegations of faulty design is barred by the statute of repose.

■ When confronted with a summary judgment appeal, this Court must determine whether the successful movant in the trial court carried its burden of showing that there is no genuine issue of a material fact issue and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.,* 690 S.W.2d 546, 548 (Tex.1985). In deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant is to be taken as true, and in that connection, every

reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon,* 690 S.W.2d at 548–49. Where the defendant is the movant, it is entitled to judgment if it submits appropriate summary judgment evidence disproving at least one element of the plaintiff's case. *Bradley v. Quality Service Tank Lines,* 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corporation,* 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ). If the summary judgment does not state the specific ground on which it was granted, it may be upheld on any theory presented in the motion. *Tilotta v. Goodall,* 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

■ The undisputed facts are as follows: On May 25, 1988, Michael Smither, a trespasser, was fishing along the north discharge canal of the Morgan Creek Steam Electric Station when he fell in the water and drowned. The Station and the canal are part of the private property of TU, as is a dam or weir over which hot water used to cool the electric generators flows before entering the canal and the lake for recirculating. The weir and the canal are necessary to the operation of the power plant. The falling water creates an area of highly turbulent currents at the foot of the weir and apparently attracts fish which swim up the canal to feed. This, in turn, attracts fishermen with sometimes tragic results. There had been four fishermen before Smither, all trespassers, who had fallen in and drowned in the turbulent waters since 1982, the last two within two weeks prior to Smither's death.

TU's property around the weir and canal were enclosed by a 6 foot chain link fence topped by three strands of barbed wire slanted outward and over the canal itself by a cable barrier fence. A number of "no trespassing" signs were attached to the chain link fence and other signs located within the fence line proclaimed, "DANGER, KEEP OUT, DEEP WATER–STRONG CURRENT, 'STAY AWAY!' FOR YOUR OWN SAFETY." TU employed private security guards to patrol the area and

in addition, a game warden with the Texas Parks and Wildlife Department regularly patrolled the canal area and reported to TU holes cut in its chain link fence which were promptly repaired. According to the game warden, TU had a policy of filing trespassing charges against any person he caught in TU's area. TU had not authorized Smither to be on the property and had no knowledge or notice that he was on its property prior to notification of the drowning.

Mrs. Smither brought this suit on behalf of her minor daughter and herself for wrongful death, alleging that TU knew or should have known of the presence of trespassing fishermen and that it was negligent and grossly negligent by failing to erect proper barriers to prevent fishermen from gaining access to its property, by failing to warn Smither and other members of the public of the dangerous condition of the waters, by failing to provide a security guard and by failing to design the dam properly to eliminate the dangerous condition and to allow anyone who fell into the water a means of safe exit. In support of these allegations and in opposition to the motion for summary judgment, Mrs. Smither points to deposition testimony of a "water safety expert" who stated that TU failed to exercise reasonable care and that it should have taken additional safety precautions such as putting an additional fence around the weir area or over the top of the weir area, putting boulders in the area below the weir to break up the hydraulic action, eliminating the fish so as to make the area less attractive to fishermen and posting stronger warning signs. She also relies on the testimony of TU's plant manager that he was aware of the drownings, and that he had called a company engineer who recommended that an additional fence be erected around the weir area, which was never done, as some evidence of TU's conscious indifference.

■ It has long been the law in Texas that a landowner or premises occupier owes to a trespasser only the duty not to injure him willfully, wantonly, or through gross negligence.[1] *Burton Construction & Shipbuilding Company v. Broussard,* 154 Tex. 50, 273 S.W.2d 598, 603 (1954); *Weaver v. KFC Management, Inc.,* 750 S.W.2d 24, 26 (Tex.App.—Dallas 1988, writ denied); *Amara v. Lain,* 725 S.W.2d 734, 738 (Tex.App.—Fort Worth 1986, no writ); *Mendoza v. City of Corpus Christi,* 700 S.W.2d 652, 654 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). In comparison, a premises occupier owes to an invitee a duty to exercise the ordinary care that a reasonably prudent person would exercise under all the pertinent same or similar circumstances, *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983); whereas, the duty owed to a licensee is not to injure the person willfully, wantonly or through gross negligence *and to warn of or make safe dangerous conditions known to the possessor of the premises. Lower Neches Valley Authority v. Murphy,* 536 S.W.2d 561, 563 (Tex.1976); *Weaver,* 750 S.W.2d at 26; *Mendoza,* 700 S.W.2d at 654.

■ Since it is undisputed that Smither was a trespasser and it is also undisputed that TU knew of the dangerous condition on its premises, the distinction between the duty owed to a trespasser as opposed to a licensee is important. The premises occupier does not owe a trespasser the duty to warn of or make safe dangerous conditions known to it. It has only the duty to refrain from injuring the trespasser through willful, wanton or grossly negligent acts or omissions. The acts or omissions in question refer to the activities or conduct of the occupier on the premises, not the conditions of the premises. Trespassers entering land owned or occupied by another without permission and for their own purposes take the premises as they find them and the occupier owes them no duty to warn them of a dangerous condition or to make the premises safe. *Texas Cities Gas Co. v. Dickens,* 140 Tex. 433, 168 S.W.2d 208, 210

[1]. Gross negligence is defined as "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty Company v. Walls,* 616 S.W.2d 911, 920 (Tex.1981); *Missouri Pacific Ry. v. Shuford,* 72 Tex. 165, 10 S.W. 408, 411 (1888).

(1943); *Carlisle v. Weingarten*, 137 Tex. 220, 152 S.W.2d 1073, 1075 (1941); *Streety v. Chambers*, 368 S.W.2d 148, 150 (Tex.Civ. App.—Eastland 1963, writ ref'd n.r.e.). In this case, Smither's drowning resulted not from any conduct of TU on the premises but from a dangerous condition. The fence and the "no trespassing" signs would have the effect of ensuring that anyone entering the premises would be a trespasser and not a licensee. The additional signs warning of the dangerous waters were not required as to a trespasser but do show a conscious concern of TU for the safety even of trespassers.

Mrs. Smither argues that there is evidence of gross negligence as shown by the deposition testimony that TU knew of the dangerous condition and the four prior drowning deaths and that it could have done more to warn Smither and other trespassers of the danger and to make the condition less attractive and more safe. In support of the proposition that the occupier's duty to refrain from visiting gross negligence upon trespassers includes the duty to warn and make safe dangerous conditions, Mrs. Smither cites *Broussard, Amara, Mendoza, Streety* and *Rowland v. City of Corpus Christi*, 620 S.W.2d 930, 933 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

In *Broussard*, the Supreme Court affirmed the trial court's instructed verdict denying the trespasser any recovery because there was no pleadings or evidence that he suffered his injuries, caused by an explosion, as the result of the willful, wanton or grossly negligent acts of the shipbuilding company. 273 S.W.2d at 603. In *Amara*, the appellate court reversed a summary judgment in favor of an independent contractor who it was alleged had been guilty of gross negligence in stacking sheetrock which fell over injuring a trespassing child. Significantly, the summary judgment granted to the premises occupier (a home builder) was affirmed since it had no direct control over "the actions of the independent contractor." 725 S.W.2d at 737. *Mendoza* and *Rowland* were both drowning cases in which Chief Justice Nye of the Corpus Christi Court found it unnecessary to determine whether the victims were trespassers or licensees because even if licensees, there was no evidence that the city had actual knowledge of the conditions that caused the injuries. 700 S.W.2d at 655 and 620 S.W.2d at 935, respectively. In *Streety*, the appellate court affirmed judgment for the defendants based on the jury finding that the plaintiff was a trespasser when he was killed by blasting operations because his death did not result from the willful or wanton acts or the gross negligence of the defendants. 368 S.W.2d at 150. None of these cases are authority for the proposition that TU owed a duty to Smither as a trespasser to warn him more adequately of or to make more safe a dangerous condition on the premises.

In a recent almost identical case involving the drowning of one Jaime Baldwin, Jr. in the same turbulent canal spillway five days before Smither's death, the Eastland Court of Appeals affirmed a summary judgment in favor of TU, holding that the summary judgment evidence conclusively established that there was no gross negligence on the part of TU. *Jaime Baldwin, Sr., et al. v. Texas Utilities Electric Company*, 819 S.W.2d 264 (Tex.App.—Eastland 1991).

Apart from the allegations and evidence concerning the condition of the premises, there are no allegations (or evidence for that matter) that Smither's drowning resulted from the grossly negligent acts or omissions of TU in connection with any activities or conduct on such premises. Assuming Smither's trespasser status as a constant, TU owed him no duty with respect to the dangerous condition of the premises. The erection and repair of the fence and barrier, the posting of warning signs and the patrolling of the area were of benefit to would-be trespassers and if anything, showed a conscious concern for their safety over and above what the law required. Points of Error Nos. One and Two are overruled.

■ TU has asserted in a reply point that in any event, Mrs. Smither's suit is barred by the ten-year statute of repose

since the weir and canal were designed and built more than ten years prior to the filing of this suit. The statute of repose refers to Section 16.008(a) of the Texas Civil Practice and Remedies Code which provides that a claim against "a registered or licensed architect or engineer in this state, who designs, plans, or inspects the construction of an improvement to real property ... [must be brought] ... not later than 10 years after the substantial completion of the improvement ... in an action arising out of a defective or unsafe condition of the real property, [or] the improvement...." Tex.Civ.Prac. & Rem.Code § 16.008(a) (Vernon 1986).

Section 16.008 was intended to apply only to suits against architects, engineers and the like who were involved in designing, planning or inspecting improvements to real property as distinguished from tenants or owners who possess or control the property. *McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918, 922 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). TU, by its summary judgment proof, has established that Ebasco Services, Inc. was the engineering company responsible for the design of the weir and canal. Therefore, TU is not entitled to the protection afforded by Section 16.008.

Judgment affirmed.