RUSSELL V. CITY OF FORT WORTH TEXAS

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-191-CV

WILLIAM RUSSELL APPELLANT

V.

THE CITY OF FORT WORTH TEXAS APPELLEE

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In two issues, William Russell asserts error on the part of the trial court in granting the City of Fort Worth’s Motion to Dismiss for Want of Jurisdiction and in failing to find that the City of Fort Worth had a duty to warn him of, or alleviate, a dangerous condition.  We affirm.

II.  Background

This is the case of the distracted trespasser.  According to “Plaintiff’s First Amended Original Petition,”  

On October 2, 2002, during the evening hours when the park was still open to the general public, at approximately 10:30 P.M., Mr. Russell entered the Water Gardens in downtown Fort Worth.  Shortly after entering the park, Mr. Russell approached a 25 foot high wall from behind at the top of the wall.  The wall is generally located on the south side of the Water Gardens and the back at the top of the wall.  The wall is generally located on the south side of the Water Gardens and the back of the wall is generally adjacent to Lancaster Avenue near its intersection with Houston Street.  The front of the wall faces an open courtyard area in the park.  Since Mr. Russell approached the wall from behind after dark and the lighting was not adequate, he had no knowledge that there was a 25 foot drop from the top of the wall into the courtyard.  There were no warning signs or markers posted which notified Mr. Russell of the danger, and there was no fence, guardrail, handrail or other barricade which would prevent any person, including Mr. Russell, from falling off the ledge of the wall into the courtyard below.  Further, there was inadequate lighting.  Further, numerous persons had fallen and injured themselves upon prior occasions due to the absence of adequate barriers, improper lighting and failure of the City to warn persons in the park of dangers of which the City knew or should have know.  

Mr. Russell, therefore, fell from the wall into the courtyard, landing on both feet and then falling forward on his face.

Specifically, Russell was there with a female friend when, as he explained in his deposition, “I’m walking along and she said something to me.  I turned around and looked at her.  And the next step, I know I was like falling.”  

Russell asserted negligence and gross negligence in his personal injury suit against the City.  

The conduct of [the City] was willful, wanton, or grossly negligent conduct.  In this regard, [the City] had knowledge of numerous prior occasions when patrons at the same park fell and were injured due to the absence of appropriate safety devices, including but not limited to safety barriers and proper lighting, but nevertheless failed to erect a barrier, improve the lighting or otherwise warn [Russell] of a sudden and unexpected drop-off from the top of the wall in question.  [The City] had knowledge of the sudden 25 foot drop from the top of the wall and [Russell] did not have the knowledge of such dangerous conditions under the circumstances.  In sum, [the City], through its agents, servants and employees, was aware of the danger, but though its acts and omissions demonstrated that it did not care to address it, and it did not address it.

The thrust of these allegations, derived from his pleadings and testimony, was that the City failed to erect warning signs and barriers along the edge of the wall.  The City responded with a “Plea to the Jurisdiction,” which the trial court granted, resulting in the dismissal of Russell’s suit and this appeal.  The City’s plea stated that “[t]he City will show that it is not liable under [Russell’s] pleading, taking the facts pled by [Russell] as true.”

III.  Standard of Review

A plea to the jurisdiction is a challenge the trial court’s authority to determine the subject matter of the action.  
Tex. Dep’t of Transp. v. Jones
, 8 S.W.3d 636, 638 (Tex. 1999).  Whether a trial court has subject-matter jurisdiction is a question of law reviewed under the de novo standard.  
Tex. Dep’t of Parks & Wildlife v. Miranda
, 133 S.W.3d 217, 225-26 (Tex. 2004).  “Likewise, whether undisputed evidence of jurisdictional facts established a trial court’s jurisdiction is also a question of law.”  
Id
. at 226.

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court’s jurisdiction to hear the cause.  We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders’ intent.  If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[’]s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend.  If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. . . . [I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. . . . If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder.  However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.  

Id
. at 226-28 (citations omitted).  

In this case, the City has not disputed the factual allegations made by Russell.  Rather, it asserts,

[Russell] was owed the duty owed a trespasser at the time of the accident.  The duty owed a trespasser on property is not to injure the trespasser by willful, wanton or grossly negligent 
conduct
.  The City owes a trespasser no duty regarding the condition of property, nor does the City owe a trespasser any duty to warn of dangerous conditions on the premises; that is, a trespasser takes property as he finds it.

IV.  The Texas Tort Claims Act and the Recreational Use Statute

As is well settled, the City is immune from alleged tort liability unless that immunity is waived in some fashion, such as by the Tort Claims Act, which waiver thereunder is limited by the Recreational Use Statute.
  Tex. Civ. Prac. & Rem. Code Ann.
 §§ 75.003(g), 101.058 (Vernon 2005).  Apart from recreational uses, liability of the City under the Tort Claims Act is measured by the City’s duty to a licensee on private property. 
 
Id
. 
§ 101.022(a).  However, the Recreational Use Statute states,

(c) If an owner, lessee, or occupant of real property other than agricultural land gives permission to another to enter the premises for recreation, the owner, lessee, or occupant, by giving the permission, 
does not
:

(1) assure that the premises are safe for that purpose;

(2) 
owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises
; or

(3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.

(d)
 Subsections 
. . . (c) 
shall not limit the liability 
of an owner, lessee, or occupant 
of real property who has been grossly negligent 
or has acted with malicious intent or in bad faith.

Id
.
 § 75.002(c), (d) (Vernon Supp. 2005) (emphasis added).  Liability resulting from the breach of the duty owed to a trespasser arises when the premises owner causes an injury willfully, wantonly, or through gross negligence. 
 Burton Constr. & Shipbuilding Co. v. Broussard,
 154 Tex. 50, 273 S.W.2d 598, 603 (1954).  This is reinforced by the subparagraph (d) of the Recreational Use Statute.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 75.002(d).  Our Supreme Court has interpreted this language as follows:

Therefore, a governmental unit waives sovereign immunity under the recreational use statute and the Tort Claims Act only if it is grossly negligent.  Gross negligence involves two components: (1) viewed objectively from the actor’s standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

Miranda
, 133 S.W.3d at 225 (citations omitted).  

The statute itself indicates that the City does not assure a park visitor that the premises are safe for recreating.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 75.002(c)(1).  At least two of our sister courts, and this court, have held that any potential liability does not include the failure to “warn of or make safe dangerous 
conditions
 known to it.”  
Smither v. Tex. Utils. Elec. Co., 
824 S.W.2d 693, 695 (Tex. App.—El Paso 1992, writ dism’d by agr.) (emphasis supplied); 
see also City of Fort Worth v. Crockett
, 142 S.W.3d 550, 553 (Tex. App.—Fort Worth 2004, pet. denied) (holding that landowners owe no duty to warn trespassers of dangerous conditions on the premises); 
Baldwin v. Tex. Utils. Elec. Co.
, 819 S.W.2d 264, 266 (Tex. App.—Eastland 1991, writ denied) (same).  The Amarillo Court of Appeals has also held that a city had no duty to warn a recreational user such as Russell
(footnote: 2) or make safe a dangerous 
condition
 in a park such as the Water Gardens, stating that 
conduct
, 
not condition
, is the liability-activating standard.  
See City of Lubbock v. Rule
, 68 S.W.3d 853, 859 (Tex. App.—Amarillo 2002, no pet.).  

However, the Austin court has held that as a result of the Supreme Court’s holding in 
Miranda
, the 
City of Lubbock 
“conduct rule” has been abrogated:  

We interpret Miranda to acknowledge that a premises defect claim may properly be brought under the recreational use statute as long as the plaintiffs create a factual dispute regarding gross negligence with respect to the defect alleged. . . .
 We understand this language
(footnote: 3) to essentially overrule the holding of the Amarillo court’s decision in [
City of Lubbock v. Rule
]
 that gross negligence under the recreational use statute could only occur by a landowner’s conduct that “contemporaneously” caused an injury.  
See City of Lubbock v. Rule
, 68 S.W.3d 853 (Tex. App.—Amarillo 2002, no pet.) (“And, in stressing the word conduct, we emphasize that the duty does not encompass injury arising from condition of realty but only injury arising from the activity or conduct of the occupier.”).

State ex. rel. Tex. Dep’t of Parks & Wildlife v. Shumake
, 131 S.W.3d 66, 83 (Tex. App.—Austin 2003, pet granted).
  However, as will be discussed, the reasoning in 
Shumake
 has been rejected by this court.
(footnote: 4)
V.  The Restatement (Second) of Torts

In order to circumvent the apparent lack of a duty owed by the City to Russell to warn of the ledge in question or make it safe, Russell notes that in 
City of Bellmead v. Torres
, the Texas Supreme Court held that the only duty under the Recreational Use Statute was to refrain “from causing injury willfully, wantonly, or through gross negligence.”  89 S.W.3d 611, 613 n.13 (Tex. 2002).  Russell also cites, as one authority, “
see also 
Restatement (Second) of Torts 
§ 333 (1965).”
 
 
That provision of the
 
Restatement reads,

§ 333. General Rule

Except as stated in §§ 334-339
, a possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care

(a) to put the land in a condition reasonably safe for their reception, or

(b) to carry on his activities so as not to endanger them. 

Restatement (Second) of Torts 
§ 333 (1965) (emphasis supplied).

Russell then argues that by referencing sections 334-339 of the Restatement in a footnote, the
 City of Bellmead 
court adopted those sections, and the 
Smither
 standard
(footnote: 5) is therefore appropriate only when the premises owner is unaware of the trespass.  When there is knowledge of a trespasser’s likely presence, there exists a higher standard for “known trespassers” contained in sections 335 and 337 of the Restatement (Second) of Torts as articulated in
 Shumake, 
131 S.W.3d at 77.  These sections read as follows: 

§ 335. Artificial Conditions Highly Dangerous To Constant Trespassers on Limited Area

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

§ 337. Artificial Conditions Highly Dangerous To Known Trespassers

A possessor of land who maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them of the condition if

(a) the possessor knows or has reason to know of their presence in dangerous proximity to the condition, and 

(b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved.

Restatement (Second) of Torts 
§§ 335, 337.  However, as noted by the City, no Texas Supreme Court case has ever explicitly adopted those Restatement provisions, a petition for review has been granted in 
Shumake
, and this court has previously addressed and disapproved of the 
Shumake
 holding.  In
 City of Fort Worth v. Crockett
, we noted that “the primary issue we must decide is whether the City of Fort Worth has waived its immunity from a suit by Craig Crockett, a recreational user of a bike path in a city park, for the City’s alleged failure to fully barricade a dangerous condition on the bike path.”  142 S.W.3d at 551.  We went on to hold,

Crockett urges us to follow the Austin Court of Appeals’[s] decision in [] 
Shumake
.  The  Shumake court held that recreational use landowners owe a duty to “known trespassers,” i.e., expected recreational users, to remove or warn of certain dangerous, artificial conditions about which the landowners know or should know.  We decline to follow 
Shumake
 because it conflicts both with the recreational use statute, which provides that landowners do not assure that their premises are safe for recreational use, and the well-settled common-law rule that landowners owe no duty to trespassers to keep their premises safe or to warn them of dangerous conditions.  Further, applying 
Shumake
 to the circumstances of this case would be inconsistent with the well-established precedent that the Tort Claims Act does not waive immunity from suit for injuries caused by the nonuse of property—e.g., the failure to erect barricades or warning signs.   

Id. 
at
 
553-54 (citations omitted).  Therefore, this court has rejected the reasoning of the 
Shumake
 court in the adoption of the two additional sections of the Restatement and the distinction between known and unknown trespassers, and the
 Smither
 standard remains in place.  Further, the allegation in 
Crockett
, failure to warn/make safe a dangerous condition, parallels those in issue here.

VI.  Gross Negligence

Russell also argues that by asserting gross negligence on the part of the City, he has circumvented application of the Recreational Use Statute pursuant to 
Tex. Civ. Prac. & Rem. Code Ann.
 § 75.002(d)
(footnote: 6), and he should be treated as a licensee, not a trespasser.  This section indicates that the statue is inapplicable to grossly negligent 
conduct
, as opposed to a condition, and this is an important distinction.  As put by the 
Smither
 court, 

[t]he premise occupier does not owe a trespasser the duty to warn of or make safe dangerous conditions known to it.  It has only the duty to refrain from injuring the trespasser through willful, wanton or grossly negligent acts or omissions.  The acts or omissions in question refer to the 
activities or conduct 
of the occupier of the premises, not the conditions of the premises.  Trespassers . . . take the premises as they find them and the occupier owes them 
no duty to warn them of a dangerous condition 
or to make the premises safe.

Smither
, 824 S.W.2d at 695 (emphasis supplied).  This is echoed by our supreme court.  “[T]he City owed Torres only the duty not to injure her through willful, wanton, or grossly negligent 
conduct
.”  
City of Bellmead
, 89 S.W.3d at 615 (emphasis supplied).  An examination of Russell’s pleadings indicates that his complaints were related to the condition of the wall, not contemporaneous
(footnote: 7) conduct on the part of the City.  As noted by the court in 
City of Lubbock
,

Our Supreme Court continues to recognize a distinction between negligent conduct committed by an occupier of property that immediately causes injury and the same negligent conduct that does not inflict immediate or “contemporaneous” harm.  The former is actionable via a claim sounding in simple negligence while the latter must be pursued through a claim founded upon premises liability.  
Timberwalk Apts., Partners, Inc. v. Cain
, 972 S.W.2d 749, 753 (Tex. 1998); 
Keetch v. Kroger Co.
, 845 S.W.2d 262, 264 (Tex. 1992).  Thus, for instance, one who slips on a substance covering a grocery store floor at the same time the store employee carelessly sprays the substance must sue under the theory of negligent activity while a customer who slips on the same patch of floor an hour after the employee stopped carelessly spraying the substance must allege a claim sounding in premises liability.  
Keetch v. Kroger Co., supra
.  Should the injured person in the first scenario aver a premises liability claim or the injured in the second scenario allege a claim sounding in mere negligence, neither could recover despite the fact that the same act effectively caused the same injury . . . . For instance, if a hiker in a city park is injured by 

falling construction material which a city employee is then stacking in a wilful, wanton, or grossly negligent way, the city could arguably be held liable under 
Keetch
.  Yet, if another hiker encounters the same falling material the next day, then he would have no cause of action.  This would be true despite the fact that both hikers are trespassers under the Recreational Use Act.  And, the simple reason why it would be true concerns the temporal relationship between the improper conduct and the injury.  Having occurred the day after the employee completed his misconduct, the second hiker's injuries would not be “contemporaneous” with the misconduct, and his claim would be limited to one of premises liability, i.e. one founded upon the condition of the property.  And, because a land owner owes trespassers no duty regarding the condition of the property, the second hiker would recover nothing.  On the other hand, the first hiker’s injuries would be “contemporaneous” with the misconduct and therefore actionable under a claim of negligent activity conducted wilfully, wantonly or with gross negligence.  Simply put, the mere passage of time would dictate which one wins and which one loses.  An interesting quirk, but apparently the law nonetheless.

68 S.W.3d at 860.

Therefore, the gross negligence exception to the Recreational Use Statute is inapplicable, the Recreational Use Statute is otherwise applicable, and the City violated no duty owed to Russell.  The plea to the jurisdiction was properly granted.  We overrule Russell’s first and second issues.

VII. Conclusion

Having overruled Russell’s first and second issues, we affirm the judgment of the trial court. 

BOB MCCOY

JUSTICE

PANEL M: HOLMAN, WALKER, and MCCOY, JJ.

DELIVERED: May 18, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
Russell acknowledges that the Recreational Use Statute applies to the incident in question.

3:
The “language” referred to is as follows:

We have observed that with regard to the subjective component of gross negligence, it is the defendant’s state of mind—whether the defendant knew about a peril but nevertheless acted in a way that demonstrated that he did not care about the consequences—that separates ordinary negligence from gross negligence.  We search the record for evidence that the Department’s acts or omissions demonstrate that it did not care about the consequences to the Mirandas of a known extreme risk of danger.  The Mirandas fail to point to any evidence, and the record contains no evidence, that shows that sudden branch drop syndrome constitutes an extreme risk of danger or that the Department had actual, subjective knowledge of that risk but nevertheless proceeded in conscious disregard for the safety of others.  Nor is there any evidence that the Department could have taken any reasonable steps to minimize the dangers of an “unforseeable” and “unpredictable” phenomenon.  We conclude that the evidence in the record establishes that the Department was not grossly negligent and that the Mirandas have failed to raise a fact question regarding the Department’s alleged gross negligence.

Miranda,
 133 S.W.3d at 226 (citations omitted).

4:
See 
Crockett
, 142 S.W.3d at 553
.

5:
Any potential liability does not include the failure to “warn of or make safe dangerous 
conditions
 known to it.”  
Smither, 
824 S.W.2d at 695 (emphasis supplied)
.

6:
“(d)
 Subsections 
. . . (c) 
shall not limit the liability 
of an owner, lessee, or occupant 
of real property who has been grossly negligent 
or has acted with malicious intent or in bad faith.
”
  
Tex. Civ. Prac. & Rem. Code Ann.
 § 75.002(d) (emphasis added)
.

7:
“[S]ubsection ‘d’ of section 75.002 cannot, on its own, create liability where none would exist in its absence.  Because of that, we believe subsection ‘d’ of section 75.002 merely confirms that the liability-limiting provisions of section 75.002 do not limit liability that otherwise exists for 
contemporaneous
 acts of gross negligence or acts committed with malicious intent or bad faith.”

Flye v. City of Waco
, 50 S.W.3d 645, 649 (Tex. App.—Waco 2001, no pet.) (emphasis supplied).