COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-191-CV

 

 

WILLIAM RUSSELL                                                               APPELLANT

 

                                                   V.

 

THE CITY OF FORT WORTH TEXAS                                          APPELLEE

 

                                              ------------

 

            FROM
THE 67TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction

In two issues, William
Russell asserts error on the part of the trial court in granting the City of
Fort Worth=s Motion to
Dismiss for Want of Jurisdiction and in failing to find that the City of Fort
Worth had a duty to warn him of, or alleviate, a dangerous condition.  We affirm.








II.  Background

This is the case of the
distracted trespasser.  According to APlaintiff=s First
Amended Original Petition,@  

On
October 2, 2002, during the evening hours when the park was still open to the
general public, at approximately 10:30 P.M., Mr. Russell entered the Water
Gardens in downtown Fort Worth.  Shortly
after entering the park, Mr. Russell approached a 25 foot high wall from behind
at the top of the wall.  The wall is
generally located on the south side of the Water Gardens and the back at the
top of the wall.  The wall is generally
located on the south side of the Water Gardens and the back of the wall is
generally adjacent to Lancaster Avenue near its intersection with Houston
Street.  The front of the wall faces an
open courtyard area in the park.  Since
Mr. Russell approached the wall from behind after dark and the lighting was not
adequate, he had no knowledge that there was a 25 foot drop from the top of the
wall into the courtyard.  There were no
warning signs or markers posted which notified Mr. Russell of the danger, and
there was no fence, guardrail, handrail or other barricade which would prevent
any person, including Mr. Russell, from falling off the ledge of the wall into
the courtyard below.  Further, there was
inadequate lighting.  Further, numerous
persons had fallen and injured themselves upon prior occasions due to the
absence of adequate barriers, improper lighting and failure of the City to warn
persons in the park of dangers of which the City knew or should have know.  

Mr. Russell, therefore, fell from the wall into
the courtyard, landing on both feet and then falling forward on his face.

 

Specifically, Russell was there with a female
friend when, as he explained in his deposition, AI=m walking along
and she said something to me.  I turned
around and looked at her.  And the next
step, I know I was like falling.@  








Russell asserted negligence
and gross negligence in his personal injury suit against the City.  

The
conduct of [the City] was willful, wanton, or grossly negligent conduct.  In this regard, [the City] had knowledge of
numerous prior occasions when patrons at the same park fell and were injured
due to the absence of appropriate safety devices, including but not limited to
safety barriers and proper lighting, but nevertheless failed to erect a
barrier, improve the lighting or otherwise warn [Russell] of a sudden and
unexpected drop-off from the top of the wall in question.  [The City] had knowledge of the sudden 25
foot drop from the top of the wall and [Russell] did not have the knowledge of
such dangerous conditions under the circumstances.  In sum, [the City], through its agents,
servants and employees, was aware of the danger, but though its acts and
omissions demonstrated that it did not care to address it, and it did not
address it.

 

The thrust of these allegations, derived from his
pleadings and testimony, was that the City failed to erect warning signs and
barriers along the edge of the wall.  The
City responded with a APlea to the
Jurisdiction,@ which the
trial court granted, resulting in the dismissal of Russell=s suit and this appeal.  The
City=s plea stated that A[t]he City will show that it is not liable under [Russell=s] pleading, taking the facts pled by [Russell] as true.@

III.  Standard of Review








A plea to the jurisdiction is
a challenge the trial court=s authority to determine the subject matter of the action.  Tex. Dep=t of Transp. v. Jones, 8 S.W.3d
636, 638 (Tex. 1999).  Whether a trial
court has subject-matter jurisdiction is a question of law reviewed under the
de novo standard.  Tex. Dep=t of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 225-26 (Tex. 2004).  ALikewise, whether undisputed evidence of jurisdictional facts
established a trial court=s
jurisdiction is also a question of law.@  Id. at 226.

When
a plea to the jurisdiction challenges the pleadings, we determine if the
pleader has alleged facts that affirmatively demonstrate the court=s
jurisdiction to hear the cause.  We
construe the pleadings liberally in favor of the plaintiffs and look to the
pleaders=
intent.  If the pleadings do not contain
sufficient facts to affirmatively demonstrate the trial court[=]s
jurisdiction but do not affirmatively demonstrate incurable defects in
jurisdiction, the issue is one of pleading sufficiency and the plaintiffs
should be afforded the opportunity to amend. 
If the pleadings affirmatively negate the existence of jurisdiction,
then a plea to the jurisdiction may be granted without allowing the plaintiffs
an opportunity to amend. . . . [I]f a plea to the jurisdiction challenges the
existence of jurisdictional facts, we consider relevant evidence submitted by
the parties when necessary to resolve the jurisdictional issues raised, as the
trial court is required to do. . . . If the evidence creates a fact question
regarding the jurisdictional issue, then the trial court cannot grant the plea
to the jurisdiction, and the fact issue will be resolved by the fact
finder.  However, if the relevant
evidence is undisputed or fails to raise a fact question on the jurisdictional
issue, the trial court rules on the plea to the jurisdiction as a matter of
law.  

 

Id. at 226-28
(citations omitted).  

In this case, the City has
not disputed the factual allegations made by Russell.  Rather, it asserts,








[Russell]
was owed the duty owed a trespasser at the time of the accident.  The duty owed a trespasser on property is not
to injure the trespasser by willful, wanton or grossly negligent conduct.  The City owes a trespasser no duty regarding
the condition of property, nor does the City owe a trespasser any duty to warn
of dangerous conditions on the premises; that is, a trespasser takes property
as he finds it.

 

IV.  The Texas Tort Claims Act and the
Recreational Use Statute

As is well settled, the City
is immune from alleged tort liability unless that immunity is waived in some
fashion, such as by the Tort Claims Act, which waiver thereunder is limited by
the Recreational Use Statute.  Tex. Civ. Prac. & Rem. Code Ann. '' 75.003(g), 101.058 (Vernon 2005). 
Apart from recreational uses, liability of the City under the Tort
Claims Act is measured by the City=s duty to a licensee on private property.  Id. ' 101.022(a).  However, the
Recreational Use Statute states,

(c)
If an owner, lessee, or occupant of real property other than agricultural land
gives permission to another to enter the premises for recreation, the owner,
lessee, or occupant, by giving the permission, does not:

(1) assure that the premises are safe for that
purpose;

(2) owe to the person to whom permission is
granted a greater degree of care than is owed to a trespasser on the premises;
or

(3) assume responsibility or incur liability for
any injury to any individual or property caused by any act of the person to
whom permission is granted.

 

(d)
Subsections . . . (c) shall not limit the liability of an owner, lessee,
or occupant of real property who has been grossly negligent or has acted
with malicious intent or in bad faith.

 








Id. ' 75.002(c), (d) (Vernon Supp. 2005) (emphasis added).  Liability resulting from the breach of the
duty owed to a trespasser arises when the premises owner causes an injury
willfully, wantonly, or through gross negligence.  Burton Constr. & Shipbuilding Co. v.
Broussard, 154 Tex. 50, 273 S.W.2d 598, 603 (1954).  This is reinforced by the subparagraph (d) of
the Recreational Use Statute.  Tex. Civ. Prac. & Rem. Code Ann. ' 75.002(d).  Our Supreme Court
has interpreted this language as follows:

Therefore,
a governmental unit waives sovereign immunity under the recreational use
statute and the Tort Claims Act only if it is grossly negligent.  Gross negligence involves two components: (1)
viewed objectively from the actor=s standpoint, the act or
omission complained of must involve an extreme degree of risk, considering the
probability and magnitude of the potential harm to others; and (2) the actor
must have actual, subjective awareness of the risk involved, but nevertheless
proceed in conscious indifference to the rights, safety, or welfare of others.

 

Miranda, 133
S.W.3d at 225 (citations omitted).  








The statute itself indicates
that the City does not assure a park visitor that the premises are safe for
recreating.  Tex. Civ. Prac. & Rem. Code Ann. ' 75.002(c)(1).  At least two of
our sister courts, and this court, have held that any potential liability does
not include the failure to Awarn of or make safe dangerous conditions known to it.@  Smither v. Tex. Utils.
Elec. Co., 824 S.W.2d 693, 695 (Tex. App.CEl Paso 1992, writ dism=d by agr.) (emphasis supplied); see also City of Fort Worth v.
Crockett, 142 S.W.3d 550, 553 (Tex. App.CFort Worth 2004, pet. denied) (holding that landowners owe no duty to
warn trespassers of dangerous conditions on the premises); Baldwin v. Tex. Utils.
Elec. Co., 819 S.W.2d 264, 266 (Tex. App.CEastland 1991, writ denied) (same). 
The Amarillo Court of Appeals has also held that a city had no duty to
warn a recreational user such as Russell[2]
or make safe a dangerous condition in a park such as the Water Gardens,
stating that conduct, not condition, is the liability-activating
standard.  See City of Lubbock v. Rule,
68 S.W.3d 853, 859 (Tex. App.CAmarillo 2002, no pet.).  

However, the Austin court has
held that as a result of the Supreme Court=s holding in Miranda, the City of Lubbock Aconduct rule@ has been
abrogated:  








We
interpret Miranda to acknowledge that a premises defect claim may properly be
brought under the recreational use statute as long as the plaintiffs create a
factual dispute regarding gross negligence with respect to the defect alleged.
. . . We understand this language[3]
to essentially overrule the holding of the Amarillo court=s
decision in [City of Lubbock v. Rule] that gross negligence under the
recreational use statute could only occur by a landowner=s
conduct that Acontemporaneously@
caused an injury.  See City of Lubbock
v. Rule, 68 S.W.3d 853 (Tex. App.CAmarillo 2002, no pet.) (AAnd,
in stressing the word conduct, we emphasize that the duty does not encompass
injury arising from condition of realty but only injury arising from the
activity or conduct of the occupier.@).

 

State ex. rel. Tex. Dep=t of Parks & Wildlife v. Shumake, 131
S.W.3d 66, 83 (Tex. App.CAustin 2003,
pet granted).  However, as will be
discussed, the reasoning in Shumake has been rejected by this court.[4]

V.  The Restatement (Second) of Torts








In order to circumvent the
apparent lack of a duty owed by the City to Russell to warn of the ledge in
question or make it safe, Russell notes that in City of Bellmead v. Torres,
the Texas Supreme Court held that the only duty under the Recreational Use Statute
was to refrain Afrom causing
injury willfully, wantonly, or through gross negligence.@  89 S.W.3d 611, 613 n.13 (Tex.
2002).  Russell also cites, as one
authority, Asee also Restatement (Second) of Torts ' 333 (1965).@  That provision of the Restatement
reads,

' 333.
General Rule

 

Except as stated in ''
334-339, a possessor of land is not liable to trespassers for physical harm
caused by his failure to exercise reasonable care

(a)
to put the land in a condition reasonably safe for their reception, or

(b) to carry on his activities so as not to
endanger them. 

 

Restatement (Second) of Torts ' 333
(1965) (emphasis supplied).

 

Russell then argues that by
referencing sections 334-339 of the Restatement in a footnote, the City of
Bellmead court adopted those sections, and the Smither standard[5]
is therefore appropriate only when the premises owner is unaware of the
trespass.  When there is knowledge of a
trespasser=s likely
presence, there exists a higher standard for Aknown trespassers@ contained in sections 335 and 337 of the Restatement (Second) of
Torts as articulated in Shumake, 131 S.W.3d at 77.  These sections read as follows: 

' 335.
Artificial Conditions Highly Dangerous To Constant Trespassers on Limited Area

 








A possessor of land who knows, or from facts
within his knowledge should know, that trespassers constantly intrude upon a
limited area of the land, is subject to liability for bodily harm caused to
them by an artificial condition on the land, if

(a) the condition

(i)
is one which the possessor has created or maintains and

(ii)
is, to his knowledge, likely to cause death or serious bodily harm to such
trespassers and

(iii)
is of such a nature that he has reason to believe that such trespassers will
not discover it, and

(b)
the possessor has failed to exercise reasonable care to warn such trespassers
of the condition and the risk involved.

 

' 337.
Artificial Conditions Highly Dangerous To Known Trespassers

 

A possessor of land who maintains on the land an
artificial condition which involves a risk of death or serious bodily harm to
persons coming in contact with it, is subject to liability for bodily harm
caused to trespassers by his failure to exercise reasonable care to warn them
of the condition if

(a)
the possessor knows or has reason to know of their presence in dangerous
proximity to the condition, and 

(b)
the condition is of such a nature that he has reason to believe that the
trespasser will not discover it or realize the risk involved.

 








Restatement (Second) of
Torts '' 335, 337.  However, as noted by
the City, no Texas Supreme Court case has ever explicitly adopted those
Restatement provisions, a petition for review has been granted in Shumake,
and this court has previously addressed and disapproved of the Shumake
holding.  In City of Fort Worth v.
Crockett, we noted that Athe primary issue we must decide is whether the City of Fort Worth has
waived its immunity from a suit by Craig Crockett, a recreational user of a
bike path in a city park, for the City=s alleged failure to fully barricade a dangerous condition on the bike
path.@  142 S.W.3d at 551.  We went on to hold,

Crockett
urges us to follow the Austin Court of Appeals=[s]
decision in [] Shumake.  The  Shumake court held that recreational use
landowners owe a duty to Aknown
trespassers,@
i.e., expected recreational users, to remove or warn of certain dangerous,
artificial conditions about which the landowners know or should know.  We decline to follow Shumake because
it conflicts both with the recreational use statute, which provides that
landowners do not assure that their premises are safe for recreational use, and
the well‑settled common‑law rule that landowners owe no duty to
trespassers to keep their premises safe or to warn them of dangerous
conditions.  Further, applying Shumake
to the circumstances of this case would be inconsistent with the well‑established
precedent that the Tort Claims Act does not waive immunity from suit for
injuries caused by the nonuse of propertyCe.g., the failure to erect
barricades or warning signs.   

 

Id. at
553-54 (citations omitted). 
Therefore, this court has rejected the reasoning of the Shumake
court in the adoption of the two additional sections of the Restatement and the
distinction between known and unknown trespassers, and the Smither
standard remains in place.  Further, the
allegation in Crockett, failure to warn/make safe a dangerous condition,
parallels those in issue here.

VI.  Gross Negligence








Russell also argues that by
asserting gross negligence on the part of the City, he has circumvented
application of the Recreational Use Statute pursuant to Tex. Civ. Prac. & Rem. Code Ann. ' 75.002(d)[6],
and he should be treated as a licensee, not a trespasser.  This section indicates that the statue is
inapplicable to grossly negligent conduct, as opposed to a condition,
and this is an important distinction.  As
put by the Smither court, 

[t]he
premise occupier does not owe a trespasser the duty to warn of or make safe
dangerous conditions known to it.  It has
only the duty to refrain from injuring the trespasser through willful, wanton
or grossly negligent acts or omissions. 
The acts or omissions in question refer to the activities or conduct of
the occupier of the premises, not the conditions of the premises.  Trespassers . . . take the premises as they
find them and the occupier owes them no duty to warn them of a dangerous
condition or to make the premises safe.

 








Smither, 824
S.W.2d at 695 (emphasis supplied).  This
is echoed by our supreme court.  A[T]he City owed Torres only the duty not to injure her through
willful, wanton, or grossly negligent conduct.@  City of Bellmead, 89
S.W.3d at 615 (emphasis supplied).  An
examination of Russell=s pleadings
indicates that his complaints were related to the condition of the wall, not
contemporaneous[7]
conduct on the part of the City.  As
noted by the court in City of Lubbock,

Our
Supreme Court continues to recognize a distinction between negligent conduct
committed by an occupier of property that immediately causes injury and the
same negligent conduct that does not inflict immediate or Acontemporaneous@
harm.  The former is actionable via a
claim sounding in simple negligence while the latter must be pursued through a
claim founded upon premises liability.  Timberwalk
Apts., Partners, Inc. v. Cain, 972 S.W.2d 749, 753 (Tex. 1998); Keetch
v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992).  Thus, for instance, one who slips on a
substance covering a grocery store floor at the same time the store employee
carelessly sprays the substance must sue under the theory of negligent activity
while a customer who slips on the same patch of floor an hour after the
employee stopped carelessly spraying the substance must allege a claim sounding
in premises liability.  Keetch v.
Kroger Co., supra.  Should the
injured person in the first scenario aver a premises liability claim or the
injured in the second scenario allege a claim sounding in mere negligence,
neither could recover despite the fact that the same act effectively caused the
same injury . . . . For instance, if a hiker in a city park is injured by 








falling
construction material which a city employee is then stacking in a wilful,
wanton, or grossly negligent way, the city could arguably be held liable under Keetch.  Yet, if another hiker encounters the same
falling material the next day, then he would have no cause of action.  This would be true despite the fact that both
hikers are trespassers under the Recreational Use Act.  And, the simple reason why it would be true
concerns the temporal relationship between the improper conduct and the
injury.  Having occurred the day after
the employee completed his misconduct, the second hiker's injuries would not be
Acontemporaneous@ with
the misconduct, and his claim would be limited to one of premises liability,
i.e. one founded upon the condition of the property.  And, because a land owner owes trespassers no
duty regarding the condition of the property, the second hiker would recover nothing.  On the other hand, the first hiker=s
injuries would be Acontemporaneous@ with
the misconduct and therefore actionable under a claim of negligent activity
conducted wilfully, wantonly or with gross negligence.  Simply put, the mere passage of time would
dictate which one wins and which one loses. 
An interesting quirk, but apparently the law nonetheless.

 

68 S.W.3d at 860.

Therefore, the gross
negligence exception to the Recreational Use Statute is inapplicable, the
Recreational Use Statute is otherwise applicable, and the City violated no duty
owed to Russell.  The plea to the
jurisdiction was properly granted.  We
overrule Russell=s first and
second issues.

VII. Conclusion

Having overruled Russell=s first and second issues, we affirm the judgment of the trial court. 

 

 

 

BOB MCCOY

JUSTICE

 

PANEL M:   HOLMAN, WALKER, and MCCOY, JJ.

 

DELIVERED:
May 18, 2006








 











[1]See Tex. R. App. P. 47.4.





[2]Russell acknowledges that the
Recreational Use Statute applies to the incident in question.





[3]The Alanguage@ referred to is as follows:

 

We have observed that with regard
to the subjective component of gross negligence, it is the defendant=s state of mindCwhether the defendant knew about a
peril but nevertheless acted in a way that demonstrated that he did not care
about the consequencesCthat separates ordinary negligence
from gross negligence.  We search the
record for evidence that the Department=s acts or omissions demonstrate that it did not care about
the consequences to the Mirandas of a known extreme risk of danger.  The Mirandas fail to point to any evidence,
and the record contains no evidence, that shows that sudden branch drop syndrome
constitutes an extreme risk of danger or that the Department had actual,
subjective knowledge of that risk but nevertheless proceeded in conscious
disregard for the safety of others.  Nor
is there any evidence that the Department could have taken any reasonable steps
to minimize the dangers of an Aunforseeable@ and Aunpredictable@ phenomenon.  We conclude that the evidence in the record
establishes that the Department was not grossly negligent and that the Mirandas
have failed to raise a fact question regarding the Department=s alleged gross negligence.

 

Miranda, 133 S.W.3d at 226 (citations
omitted).





[4]See Crockett, 142
S.W.3d at 553.





[5]Any
potential liability does not include the failure to Awarn
of or make safe dangerous conditions known to it.@  Smither, 824 S.W.2d at 695 (emphasis
supplied).





[6]A(d)
Subsections . . . (c) shall not limit the liability of an owner,
lessee, or occupant of real property who has been grossly negligent or
has acted with malicious intent or in bad faith.@ 
Tex. Civ. Prac. & Rem. Code Ann. '
75.002(d) (emphasis added).





[7]A[S]ubsection >d= of section 75.002 cannot, on its
own, create liability where none would exist in its absence.  Because of that, we believe subsection >d= of section 75.002 merely confirms
that the liability-limiting provisions of section 75.002 do not limit liability
that otherwise exists for contemporaneous acts of gross negligence or
acts committed with malicious intent or bad faith.@

Flye v. City of Waco, 50 S.W.3d 645, 649 (Tex. App.CWaco 2001, no pet.) (emphasis
supplied).